**Jose Luis PENA, Appellant,**

v.

**The STATE of Texas.**

**No. PD–1411–07.**

Court of Criminal Appeals of Texas.

April 8, 2009.

Rehearing Denied June 24, 2009.

---

Scott Ramsey, Houston, for Appellant.

Sue Korioth, Special Prosecutor, Leon County District Atty. Office, Dallas, Jeffrey L. Van Horn, State's Atty., Austin, for State.

## *OPINION*

KEASLER, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, WOMACK, and HERVEY, JJ., joined.

Jose Luis Pena objected to the admission of lab test results because the State destroyed the substance tested before trial. He objected under the Texas Constitution's due course of law provision but failed to argue, before the trial judge, that it is more protective than the federal Due Process Clause. The lower court held that Pena's Texas constitutional claim was preserved and reversed on that ground.[1] We hold that it was not and reverse the court's judgment.

## Background

Pena was charged with possession of marijuana that was seized during a traffic stop in 1998. Before trial in 2003, Pena sought an independent lab analysis of the substance. He learned that it had been destroyed in 2000. He also learned that, with the exception of the Department of Public Safety's lab report, which recorded that the substance tested was marijuana, all of the records documenting the testing were lost. Before trial, Pena moved to suppress the lab test results under Section 481.160 of the Texas Health and Safety Code and Article 38.22 of the Texas Code of Criminal Procedure. Pena also lodged broad constitutional objections and custody objections "under the laws of the State of Texas and [the] Constitution of the United States and the State of Texas...." Framing the issue before him in accordance with the standard announced by the United States Supreme Court in *Arizona v. Youngblood,*[2] the trial judge responded:

> And I would note that under case law, as I understand it, it is the burden of proof of the defendant to prove that the destruction of the evidence was done willfully and that—and it is further your burden to show that the retention of the evidence would be favorable to your case. So, therefore, the Court is going to carry that motion along with the trial of this case.... Does anybody have any comment they would like to make on that?

The prosecutor agreed with the trial judge's understanding of the issues. Pena then added two more objections—an objection under the federal Confrontation Clause and an objection under the Texas Constitution's confrontation clause, Article I, Section 9. After further argument from Pena, the trial judge stated:

> I need to hear the evidence before I rule on this. But citing these cases, the

1. *Pena v. State (Pena III)*, 226 S.W.3d 634, 637, 656 (Tex.App.-Waco 2007).

2. 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1989) (the State's failure to preserve "potentially useful evidence" does not violate the Fourteenth Amendment's right to due process unless the defendant can show "bad faith" on the part of the police); *see also Illinois v. Fisher*, 540 U.S. 544, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004).

United States versus [Valenzuela–Bernal][3] and the Mahaffey [4] case, a showing that the lost evidence might have been favorable does not have the— does not meet the materiality standard. And then California versus [Trombetta],[5] again Mahaffey. When an accused complains of lost evidence he must show that the evidence lost is both material and favorable to him.

During trial, when the State called Charles Mott, a chemist with the Department of Public Safety, to testify, Pena objected to the admission of the lab test results. Pena requested the opportunity to question Mott, outside of the jury's presence, to assess his qualifications and to determine the admissibility of the test results. Regarding the latter, Pena argued that the admission of the lab results would violate his federal and state confrontation rights. Pena also asserted his right to due process, stating "the objection would be under the due process rights of the accused and the due course of law, which would be the Fifth and Sixth and Fourteenth Amendments." The trial judge granted Pena's request to question Mott, and after the parties questioned him about the destruction of the evidence, the trial judge explained:

Now, the Court understands that we have lost evidence here and in these type[s] of cases the defendant must show that the prosecution acted in bad faith when it failed to preserve the evidence to show a violation of due process or due course of law. And the defendant also has to prove that the lost evidence would be material to the case.

With these issues in mind, the trial judge then questioned Mott. Based on Mott's testimony, the trial judge found that the evidence was material but concluded that it was not favorable to Pena and that the State did not destroy it in bad faith. Pena then reurged his previous objections. In doing so, Pena, for the first time, explicitly relied on the due course of law provision of the Texas Constitution, Article I, Section 19, but he did not suggest that it provides greater protection than the United States Constitution. The trial judge overruled Pena's objections, and Pena was later convicted and sentenced to life imprisonment.

On appeal in the Waco Court of Appeals, citing Supreme Court precedent, including *Youngblood,* Pena claimed, among other things, that the trial judge erred by admitting the lab test results.[6] Although neither party raised the issue, the court of appeals decided to address whether the Texas Constitution's due course of law provision affords greater protection than the Due Process Clause of the Fourteenth Amendment.[7] The court determined that the due course of law provision "provides a

---

3. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 872–73, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982) ("The mere fact that the Government deports such witnesses is not sufficient to establish a violation of the Compulsory Process Clause of the Sixth Amendment or the Due Process Clause of the Fifth Amendment. A violation of these provisions requires some showing that the evidence lost would be both material and favorable to the defense.").

4. *Mahaffey v. State,* 937 S.W.2d 51, 53 (Tex. App.-Houston [1st Dist.] 1996, no pet.) (discussing the State's duty to preserve evidence under federal constitutional law).

5. *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (discussing the State's duty to preserve evidence under the Due Process Clause in the Fourteenth Amendment).

6. *Pena v. State (Pena II),* 191 S.W.3d 133, 134 (Tex.Crim.App.2006); *see also Pena v. State (Pena I),* 166 S.W.3d 274, 276–77 (Tex.App.-Waco 2005).

7. *Pena II,* 191 S.W.3d at 134; *see also Pena I,* 166 S.W.3d at 278.

greater level of protection with respect to lost or destroyed evidence than does the United States Constitution." [8] And, despite the absence of evidence showing that law enforcement acted in bad faith, the court, with Chief Justice Gray dissenting, reversed and remanded the case for a new trial.[9]

The State petitioned for review, which we granted to determine whether the court of appeals erred in reversing the trial judge's ruling on a legal theory that Pena never presented to the trial judge or the court of appeals.[10] We reversed and remanded the case, holding that the court erred by addressing the Texas Constitution's due course of law provision without first giving the parties an opportunity to brief the issue.[11] We recognized that whether the due course of law provision grants more protection than the Due Process Clause is a novel state constitutional question and therefore requires careful deliberation by an appellate court.[12] And following our usual practice of allowing the lower appellate courts to address preservation in the first instance,[13] we expressly declined to address whether Pena's due course of law claim was preserved.[14]

On remand, the court of appeals held that the due course of law provision provides greater protection than the Due Process Clause when the State loses or destroys evidence.[15] The court concluded

that Pena's due course of law rights were violated and held that Pena was harmed.[16]

The State petitioned for review a second time, this time alleging, among other things, that the court of appeals erred in finding that Pena preserved the due course of law provision claim at trial. We granted review and now conclude that the court of appeals erred.

## Analysis

■ Rule 33.1 of the Texas Rules of Appellate Procedure governs preservation of error, and states, in part:

(a) In General.—As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; [17]

■ This Rule encompasses the concept of "party responsibility." [18] The complaining party bears the responsibility of clearly conveying to the trial judge the particular complaint, including the precise and proper application of the law as well

---

8. *Pena I*, 166 S.W.3d at 276.

9. *Id.*

10. *Pena II*, 191 S.W.3d at 135.

11. *Id.* at 138.

12. *Id.* at 136–37.

13. *See Jones v. State*, 942 S.W.2d 1, 2 n. 1 (Tex.Crim.App.1997).

14. *Pena II*, 191 S.W.3d at 136 n. 14.

15. *Pena III*, 226 S.W.3d at 651.

16. *Id.* at 654–55.

17. Tex.R.App. P. 33.1.

18. *Reyna v. State*, 168 S.W.3d 173, 176 (Tex. Crim.App.2005) (quoting 1 Stephen Goode, et al., Texas Practice· Guide to the Texas Rules of Evidence: Civil and Criminal § 103.2 (2d ed.1993)).

as the underlying rationale.[19] Error preservation does not involve a hyper-technical or formalistic use of words or phrases; instead, "[s]traight forward communication in plain English" is sufficient.[20] To avoid forfeiting a complaint on appeal, the party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it."[21] This gives the trial judge and the opposing party an opportunity to correct the error.[22] Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.[23] In making this determination, we consider the context in which the complaint was made and the parties' shared understanding at that time.[24]

Here, the record shows that Pena did not preserve his due course of law provision claim for appellate review, and the Waco Court of Appeals erred in concluding otherwise. Although Pena eventually invoked the Texas due course of law provision when objecting before the trial judge, he failed to argue that it provides greater protection than the federal Due Process Clause. Indeed, based on Pena's initial objection under the Fourteenth Amendment, the record shows that the judge and the State understood that Pena's complaint was under only the well established federal standard concerning lost or destroyed evidence. Pena never disabused the judge of

this notion even when, in reurging his prior objections to "protect the appellate record," he first cited to Article 1, Section 19. Pena was obligated to put the trial judge on notice of the specific legal theory that he intended to advocate because: the federal constitutional standard was clearly established;[25] the trial judge and the State unmistakably relied solely on the federal standard; and there is no independent interpretation on the subject of lost or destroyed evidence under the Texas Constitution's due course of law provision. We hold that, by failing to distinguish the rights and protections afforded under the Texas due course of law provision from those provided under the Fourteenth Amendment before the trial judge in this context, Pena failed to preserve his complaint that the due course of law provides greater protection for appellate review.

■ Finally, we consider an issue raised by the dissent. The dissent contends that we implicitly ruled that Pena's due course of law complaint was preserved when we remanded this case in 2006.[26] However, as noted above, we explicitly decided not to address preservation at that time.[27] We did this because the court of appeals never expressly ruled on the issue before proceeding to the merits of the issue as "unassigned error."[28] Therefore, when remanding for briefing, we took into account two important policy interests: first, to allow the parties to have an opportunity to brief the threshold preservation question given

**19.** *Id.* at 177.

**20.** *Lankston v. State,* 827 S.W.2d 907, 908–09 (Tex.Crim.App.1992).

**21.** *Id.* at 909.

**22.** *Reyna,* 168 S.W.3d at 179.

**23.** *Id.* at 177 (quoting *Martinez v. State,* 91 S.W.3d 331, 336 (Tex.Crim.App.2002)).

**24.** *Lankston,* 827 S.W.2d at 911.

**25.** *Youngblood,* 488 U.S. at 57–58, 109 S.Ct. 333.

**26.** *Post,* at 465–67.

**27.** *Pena II,* 191 S.W.3d at 136 n. 14.

**28.** *Pena I,* 166 S.W.3d at 276–77.

the novelty of the issue; and second, to allow the court of appeals to decide the issue in the first instance with briefing.[29] It defies logic to say that we implicitly ruled on the preservation issue when we expressly declined to do so.

## Conclusion

Because Pena did not preserve his Texas Constitution due course of law complaint for appellate review, the court of appeals erred in addressing that complaint and reversing Pena's conviction and sentence on that ground. We reverse the court of appeals's judgment and remand for proceedings consistent with this opinion. Finally, it is unnecessary to reach the State's remaining grounds in light of our resolution of the preservation issue.

HOLCOMB, J., filed a dissenting opinion in which PRICE and JOHNSON, JJ., joined and in which COCHRAN, J., joined with respect to Part 1.

HOLCOMB, J., filed a dissenting opinion, in which PRICE and JOHNSON, JJ., joined. COCHRAN, J., joined in Part 1 of the opinion.

I respectfully dissent from the majority's holding that appellant's Texas constitutional claim was not preserved, for the following two reasons.

*1. Our previous disposition of this case.*

I believe this holding is especially inappropriate in the procedural context of this case. As the majority has indicated, this is not the first time the State has petitioned this Court on this exact same issue. In fact, the State presented this issue when it filed its first petition, in May 2005, stating specifically: "Did the Court of Appeals err by reversing the trial court's decision on a legal theory not presented *either to the trial court or to the Court of Appeals* by the complaining party?" (Emphasis added.) We granted review on that question and Judge Hervey, in her dissent from our ensuing opinion, expressly noted that she would "decide that the state constitutional claim decided by the Tenth Court was *not 'preserved in the trial below.'*" *Pena v. State,* 191 S.W.3d 133, 147 (Tex.Crim.App.2006) (Hervey, J., dissenting) (emphasis added) (citation omitted). But Judge Meyers, who also then dissented from our opinion, disagreed with her on that point. As he noted:

> At trial, defense counsel argued in his motion to suppress that the admission of the .test results and the testimony surrounding them would violate his due process rights guaranteed by both the United States Constitution and the Texas Constitution. Thus, the issue of a violation of Appellant's rights under the Due Course of Law provision was *raised and preserved at trial.*

*Id.* at 139 (Meyers, J., dissenting) (emphasis added).

Indeed, Judge Meyers reiterated his position on the preservation of error issue when he articulated his reasons for dissenting in that case:

> *As this issue is now properly before us,* and no statute or caselaw precedent requires us to send the case back to the court of appeals, it violates common sense and judicial economy to remand it.

*Id.* (emphasis added).

Even though this disagreement between the judges on the preservation of error question was clear, the Court declined to address that issue at that time. *See* 191 S.W.3d at 136 n. 14. But preservation of error is more than just a technicality. It is actually a procedural *gateway* that the

29. *See Jones,* 942 S.W.2d at 2 n. 1.

parties must pass in order to have their claims heard on the merit. We do not address an issue if the party was required to preserve error, but failed to do so. Thus, when we remanded this case to the court of appeals, actually ordering it to obtain briefing from the parties on the *underlying claim itself,* we had in effect allowed appellant to pass through the procedural gateway. In other words, even though we might have expressly declined to address the preservation issue, we did implicitly address it and decided either that appellant *had* preserved error or that he should be *excused* from the preservation requirement in light of the question presented in this case.

In fact, our opinion clearly suggests that we did consider the preservation issue and resolved it in appellant's favor. We stated that "[w]e have previously held, and reaffirm today, that appellate courts are free to review 'unassigned error'—a claim that *was preserved in the trial below* but was not raised on appeal." *Id.* at 136 (emphasis added). We added that, "[i]n conducting such a review, however, the question becomes whether certain circumstances obligate a court to *assign* such error by ordering briefing from the parties." *Id.* (emphasis in original). Thus, when we remanded the case ordering the court of appeals to obtain briefing from the parties, we were acknowledging that appellant's claim *had* been "preserved in the trial below" even though it had "not [been] raised on appeal." *Id.*

Our opinion was also quite clear on our reasons for excusing the preservation requirement in this case. As we stated, "[w]e recognize that many, if not most, of the types of error that would prompt *sua sponte* appellate attention need *not* be assigned because the error involved constitutes an obvious violation of established rules. *Novel constitutional issues are a*

*different matter." Id.* (first, stylistic emphasis in original; later emphases added). As we explained later in the opinion,

We do not suggest that an appellate court must order briefing every time it decides to raise on its own a point of error not briefed by the parties. As we indicated earlier, some rules-constitutional or otherwise-are already firmly established through prior litigation, having already passed through the fires of adversarial testing. And rules that do not expand the reach of the federal or state constitutions can be overturned by the Legislature; although the cost of mistakes regarding those types of rules is high, a remedy exists. *But a novel rule that expands the reach of a constitutional provision can hamstring the Legislature as well as frustrate trial courts and prosecutors who relied upon the rule that was previously in effect.*

*Id.* at 137–38 (emphasis added).

The majority in the present case acknowledges our previous holding that the Texas constitutional question in the present case is a novel issue. *See* Maj. op. at 463 ("We recognized that whether the due course of law provision grants more protection than the Due Process Clause is a novel state constitutional question and therefore requires careful deliberation by an appellate court.")(citing *Pena,* 191 S.W.3d at 136–37). In spite of its acknowledgment of and even apparent agreement with that holding, however, the current majority then proceeds to dismiss that underlying claim on the same preservation-of-error ground that our previous majority had in effect excused specifically *because* of its recognition that the underlying Texas constitutional question in the present case was a novel issue. What's more, while the majority in our previous opinion had spent considerable time discussing, and thus had in fact engaged in "careful

deliberation," *id.*, before it ultimately concluded that the court of appeals had erred only because of its "failure to afford the parties an opportunity to brief" that underlying Texas constitutional issue, *see Pena*, 191 S.W.3d at 138, the current majority does not even try to explain its departure from our previous leniency on the question of error preservation. In other words, it does not explain why what was no doubt good law to the previous majority, enabling it to *order* the court of appeals to proceed on the merits of the underlying Texas constitutional claim, is not such good law anymore.

I believe it is fair to say that we are in effect reversing our earlier decision, at least as far as the preservation issue is concerned. In my opinion, the question of preservation became moot when we remanded the case to the court of appeals *ordering* it to proceed on the underlying Texas constitutional issue by requesting the parties' briefs on it. As I noted earlier, we issued that opinion in April 2006. The court of appeals complied with our orders; and the parties complied with that court's instructions, researching and filing briefs with that court *on the underlying Texas constitutional issue.* Then, in May 2007, the court of appeals presented a very detailed and in-depth analysis of that same issue in a *published* opinion. The State then filed the current petition, in June 2007, and we are now deciding this case in April 2009. In other words, it has been almost three years since we remanded this case to the court of appeals with orders to obtain the parties' briefing on the underlying Texas constitutional issue. I submit that we are now in effect *estopped* from declining to address that underlying issue because of our own earlier orders. We cannot and should not put the parties *and* the court of appeals through all this time, effort, and expense of trying to comply with our own orders to address an issue, and then refuse to address that issue ourselves on the ground that it had never been preserved for our review, in the first place. It is simply not fair, either to the parties or to the court of appeals; and it certainly does not reflect well on this Court. We need to be consistent in the approach we take, at least in our dealing with the same case.

*2. Appellant did preserve error*

Personally, I believe that appellant did preserve error. The trial transcript is replete with appellant's repeated assertion of his rights under both the Federal Due Process Clause and the Texas Due Course of Law provision. If he truly believed that both these provisions were synonymous and provided *identical* protection, he did not need to keep invoking the state law. The Fourteenth Amendment to the United States Constitution is sufficient to provide a defendant in a state trial with all the due process protection guaranteed by the federal constitution. Thus, the fact that appellant carefully and repeatedly went to the trouble of invoking both of those provisions every single time that he objected, indicates that he was hoping *one or the other* would provide greater protection and, therefore, did his best to preserve error on whichever ground the appellate courts ultimately decided did provide more protection.

In addition, I find it significant that appellant, in his "Omnibus Pretrial Motions," clearly asked the trial court to suppress the evidence in question (testimony and reports related to the marijuana that was destroyed by the State before appellant could have it independently tested) because it had been obtained in violation of "the United States Constitution *or* the Texas Constitution." (Emphasis added.) The trial court also recognized the possibility of differing levels of protection af-

forded by the federal and state provisions, as it stated:

Now, the Court understands that we have lost evidence here and in these type [of] cases the defendant must show that the prosecution acted in bad faith when it failed to preserve the evidence to show violation of due process *or* due course of law.

(Emphasis added.)

It is also important to note that appellant did not stop at invoking the federal Due Process and the state Due Course of Law provisions. He also invoked provisions of the Texas Health and Safety Code and the Texas Code of Criminal Procedure. The purpose of his efforts was quite clear: the State had destroyed what both the trial court and the court of appeals agreed was "material" evidence against him, and he was trying to invoke whatever authority—federal *or* state—that he could possibly think of that might have provided him with the most protection in light of such destruction. It is the State's burden to prove the defendant's guilt; and Texas law in particular requires the State to take "at least five random and representative samples" of "a controlled substance property or plant" and to preserve "a sufficient quantity" to be provided for discovery by the defense, before the State is allowed to destroy the rest of such evidence. *See* TEX. HEALTH & SAFETY CODE § 481.160. But in this case, the State destroyed the very evidence that established appellant's guilt,[1] yet still felt free to proceed with the prosecution on the basis of a lab report and testimony based *solely* on that lab report,[2] even though the defense had never gotten

a chance to vindicate his rights, *under Texas law,* to independently test and confirm the identity of the destroyed evidence.

In fact, defense counsel made these concerns quite clear when he told the trial court:

And I would again just—if I understand the Court [is] going to let this testimony in, that this was tested as marijuana, that it was marijuana and the weight of the marijuana, and when the Court found that it wasn't done purposefully by the laboratory, be it the State of Texas, that puts defense counsel in a posture, Judge, where *we are forced to assume the burden and prove a negative.*

(Emphasis added.) The Court's empathy was equally clear as it responded, "I know that, Mr. Cahill. But you know, I didn't write the law." It even elaborated further:

I'm just trying to follow the law and that's what these cases say. I realize it puts the defendant in a predicament. And you're doing just what I would do if I was in your shoes. But I didn't write the law. I have got to follow the law that the courts write for me and that's what I'm trying to do and that's what they told me to do so I'm doing it.

The trial court was in fact quite understanding and afforded the defense counsel every opportunity to offer a case-any case-providing the protection that appellant sought to exclude the evidence in question. But then, no such case law exists! As I noted earlier, this Court itself had recognized in our first opinion in this case that

1. Appellant could not have been charged or prosecuted for *possessing marijuana* if the defense had been able to test and prove the substance to be something *other* than marijuana.

2. The chemist testified that he could not personally remember that particular testing because it had been almost five years since he had done that testing. He therefore relied exclusively on the aforementioned lab report for his testimony.

whether the Texas Due Course of Law provision provides greater support than the federal Due Process of Law is a novel question. Thus, all that appellant could and did do was to invoke both those federal and Texas provisions. Whether one of them offered more protection than the other was a question of law that could be addressed and resolved only by an appellate court.

The defense counsel submitted pre-trial motions, argued vigorously at the suppression hearing, and objected consistently throughout the trial on the grounds of both the federal Due Process Clause *and* the Texas Due Course of Law provisions. In explaining these grounds for his objections, the defense counsel made it crystal clear that he was trying to invoke whichever authority-federal *or* state-would have provided him the most protection to exclude the evidence in question. In short, I believe that the defense counsel made his point abundantly clear to make the trial court aware of his complaint and thus preserved error under the Texas Rule of Appellate Procedure 33.1 on the underlying Texas constitutional question in this case. We should therefore now proceed to address that underlying question.[3]

\* \* \* \* \* \*

The majority adds the following in response to the first issue I raised:

Finally, we consider an issue raised by the dissent. The dissent contends that we implicitly ruled that Pena's due course of law complaint was preserved when we remanded this case in 2006. However, as noted above, we explicitly decided not to address preservation at that time. We did this because the court of appeals never expressly ruled on the issue before proceeding to the merits of the issue as "unassigned error." Therefore, when remanding for briefing, we took into account two important policy interests: first, to allow the parties to have an opportunity to brief the threshold preservation question given the novelty of the issue; and second, to allow the court of appeals to decide the issue in the first instance with briefing. It defies logic to say that we implicitly ruled on the preservation issue when we expressly declined to do so.

Maj. op. at 464–65 (citations omitted).

The majority fails to realize, however, that we did not mention any of this in our previous opinion. *See Pena,* 191 S.W.3d 133. For instance, our opinion never stated that the court of appeals had failed to "expressly rule[ ]" on the preservation issue. *See id.* We also never instructed the court of appeals to either address or request briefing on that issue. *See id.* Thus, contrary to the current majority's assertion, we never "allow[ed] the parties to have an opportunity to brief the threshold preservation question." *See* Maj. op. at 464–65. Moreover, our earlier opinion says nothing about the "two important policy interests" only now articulated by the current majority. *See id.; see also Pena,* 191 S.W.3d 133. In fact, the only time that we talked about preservation was in that footnote in which we expressly *declined* to address the question of preservation. *See Pena,* 191 S.W.3d. at 136 n. 14. Except for that one footnote, our entire opinion was devoted exclusively to the question of whether it was appropriate for the court of appeals to have addressed the *underlying* Texas constitutional issue without first ob-

---

**3.** I express no opinion about the merit of the underlying claim in this case, except to note that, in some cases at least, we have held that the Texas Constitution offers more protection than the comparable provisions of the federal Constitution. *See, e.g., Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991) (concluding that "this Court, when analyzing and interpreting Art. I, § 9, Tex. Const., will not be bound by Supreme Court decisions addressing the comparable Fourth Amendment issue.") (footnote omitted).

taining briefing from the parties *on* that underlying issue. In short, there was nothing in our earlier opinion that could have alerted either the parties or the court of appeals to the fact that they were supposed to address anything other than the underlying issue.

Finally, I don't see anything that "defies logic"[1] in pointing out the inconsistencies in both our previous and current opinions. As I noted earlier, we had stated in our previous opinion that "[w]e have previously held, and reaffirm today, that appellate courts are free to review 'unassigned error'—a claim that was preserved in the trial below but was not raised on appeal." *See Pena*, 191 S.W.3d. at 136. Except for that one footnote in which we expressly declined to address the preservation question, *see id.* at 136 n. 14, we devoted the entire opinion to discussing the lower court's need for obtaining party briefing on the underlying Texas constitutional issue. In fact, we concluded that opinion by ordering the court of appeals to obtain such briefing solely on that underlying issue. The only *logical* way to reconcile this apparent discrepancy between the disavowing footnote and the rest of the opinion is to assume that we had decided to relax the preservation requirement in light of the novelty of the underlying question presented in the case, and that the purpose of the disavowing footnote was merely to note our unwillingness to expressly *discuss* our reasons for having relaxed that requirement.

But the current majority contests this logical assumption and insists that we had in effect reserved some right to dismiss this case on the grounds of preservation, in spite of all the time, money and effort spent by the parties and the court of appeals addressing the underlying Texas Constitutional issue that we had *explicitly*

ordered them to address three years ago. But if that is true, then the only logical explanation for the above-mentioned discrepancy between the footnote and the rest of our early opinion is that we had been *internally* inconsistent when, on the one hand, we devoted practically our entire opinion discussing the lower court's need for obtaining party briefing *solely* on the underlying Texas constitutional issue; while, on the other hand, summarily declined to address what the majority now calls "the *threshold* preservation question"[5] in a mere footnote. *See Pena* at 136 n. 14. I submit, however, that there was no such internal inconsistency in our previous opinion, and that it is the current opinion summarily dismissing the underlying claim that is actually inconsistent with our earlier approach. But no matter how one chooses to look at it, I believe that the only clear message that our opinion sends out today is that we are consistent in being inconsistent.

For all the foregoing reasons, I respectfully dissent.

---

4.  Maj. op. at 464–65.

5.  Maj. op. at 464–65 (emphasis added).