

## NUMBER 13-08-00529-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

**RAY GALVAN VACCA AKA**                                                    **Appellant,**
**RAY GALVAN,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

---

### On appeal from the 347th District Court
### of Nueces County, Texas.

---

## MEMORANDUM OPINION[1]

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Memorandum Opinion by Justice Benavides**

Ray Galvan Vacca AKA Ray Galvan ("Galvan"), appellant, was indicted for the

capital murder of Cynthia Pena.  *See* TEX. PENAL CODE ANN. § 19.03 (Vernon Supp. 2009).

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts of the case, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it.  *See* TEX. R. APP. P. 47.4.

A jury found Galvan guilty, and the trial court sentenced him to life in prison. *See id.* § 12.31(a) (Vernon Supp. 2009) (providing a sentence of life imprisonment for those adjudged guilty in capital felony cases in which the State does not seek the death penalty). Galvan argues that the trial court erred in overruling his motion to suppress his confession because he was interrogated after asserting his right to counsel. *See* U.S. CONST. amends. V, XIV; *see also Dinkins v. State*, 894 S.W.2d 330, 349 (Tex. Crim. App. 1995) (declaring that "once a suspect has invoked his right to counsel, all interrogation by the police must cease until counsel is provided or until the suspect himself re-initiates conversation"). We affirm.

## I. BACKGROUND

On December 22, 2007, Pena was found dead with approximately six stab wounds on her body, including one in the region of her heart. Responding officers from the Corpus Christi Police Department cornered Galvan a short distance from Pena's house in an H.E.B. parking lot. During the ensuing standoff, Galvan held a knife in one hand and a beer in the other. His clothes appeared to have blood on them. Galvan stated to the officers, "I am not putting this knife down. You all are going to have to shoot me. I did something stupid." Eventually, Galvan set the knife and beer down, was handcuffed by the officers, and then was placed in the back of a police car. Once in the police car, Galvan was read his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). After being read his rights and while still in the back of the police car, without prompting from the officers, Galvan declared, "I did what I had to do after [twenty] years with this woman. I regret what I did." Galvan further volunteered that "[s]he wanted to do me like this[;] I did what I had to do. I hope the medics can save her. But if she dies, that's okay. I did what

2

I had to do. I was out smoking crack all night[,] and I did what I had to do."

Galvan was taken to the police station, and while smoking a cigarette outside the station, he had a conversation with Sarah Akin, a detective with the Corpus Christi Police Department. Without being asked any questions by Akin, Galvan stated that "he did what he had to do[,] and he hoped that she made it." Galvan then asked Akin whether he needed an attorney, to which Akin replied that it was his decision. Galvan then said that he "was probably going to want one." Akin took Galvan inside the station and relayed this conversation to Ralph Lee, another detective with the Corpus Christi Police Department. Believing that Galvan had requested an attorney, Lee entered the holding cell and said to Galvan, "[J]ust so you know, in the State of Texas[,] because you have asked for an attorney[,] we can't talk to you. The only way we can talk to you is that [sic] if you tell us you want to talk to us about this case."

Galvan replied that he did want to talk to Lee about the case, and Lee called Akin into the interrogation room, where he asked Galvan to repeat his request in Akin's presence. Galvan did, and Lee took him into a room equipped with a video camera. On camera, Lee *Mirandized* Galvan, *see id.* at 444, Galvan signed a waiver, and confessed.

Before trial, Galvan filed his "Motion to Suppress Oral Statements of Defendant." After a hearing on the motion, the trial court denied it, and the case proceeded to trial. At trial, testimony regarding Galvan's statements in the H.E.B. parking lot, in the back of the police car, and at the police station, along with his signed waiver and video-taped confession, were admitted into evidence. The jury found Galvan guilty of capital murder, and because the State did not seek the death penalty, the trial court sentenced him to life in prison. *See* TEX. PENAL CODE ANN. §§ 12.31(a), 19.03. This appeal ensued.

3

## II. Preservation and Waiver

Before we can address Galvan's appellate argument, we must decide whether he properly preserved the issue for our review. *See* Tex. R. App. P. 33.1. The State contends that Galvan waived his appellate issue by failing to argue in his motion to suppress and at the suppression hearing that the detectives failed to honor his request for counsel by continuing to interrogate him, which ultimately resulted in his confession. The State also asserts that Galvan failed to object to the admission of the confession on the grounds that it was obtained in violation of his previously-invoked right to counsel. *See id.* The State argues that Galvan merely mentioned "an unspecified violation of [his] right to counsel and against self-incrimination." *See Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005). We agree.

### A. Applicable Law

To preserve his issue for appeal, Galvan must have made a timely objection or motion that stated the grounds for his contention with "sufficient specificity to make the trial court aware of the compliant . . . ." *Pena v. State*, 285 S.W.3d 459, 463 (Tex. Crim. App. 2009) (citing Tex. R. App. P. 33.1(a)(1)(A)). Galvan had "the responsibility of clearly conveying to the trial judge the particular complaint, including the precise and proper application of the law as well as the underlying rationale" and must have "'let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.'" *Id.* at 463-64 (citing *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) and quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

## B.       Discussion

In his "Motion to Suppress Oral Statements of Defendant," Galvan moved the trial court to "suppress all evidence resulting from an illegal oral statement given by the Defendant . . . ."  He further requested that the trial court suppress, among other types of evidence:  (1) "[a]ll oral statements of the Defendant obtained as a result of the illegal statement(s) taken from the Defendant"; and (2) "[a]ny and all invocations of his rights by the Defendant, his refusal to waive his rights and consent to be interviewed by law enforcement agents, as well as his post-arrest silence."  In support of his motion to suppress, Galvan stated that:

> the Defendant would show this Honorable Court that at the time of any conversations between the Defendant and law enforcement officers, the Defendant was either under arrest or substantially deprived of his freedom by the attendant conduct of said law enforcement officers and the surrounding circumstances; or that the actions of law enforcement rendered the taking of the statement coercive and involuntary.  The Defendant was interrogated by law enforcement officers.
>
> . . . .
>
> That said Defendant was deprived of his right to counsel and did not intelligently, understandingly or knowingly waive his right to counsel or right to remain silent.
>
> . . . .
>
> That any oral statement(s) as well as any evidence or testimony developed as a result of the oral statement(s) were tainted by the illegal and unlawful detention or arrest of the Defendant herein, in violation of the Defendant's constitutional rights under the Fifth and Fourteenth Amendments to the *United States Constitution*; Art. I, §9 of the *Texas Constitution*; and *Tex. Code Crim. Pro.* Art. 38.22.  Any statement given by the Defendant was not voluntary.
>
> . . . .

5

That any oral statement taken from the Defendant was taken in violation of *Tex. Code Crim. Pro.* Art. 38.22 §3, because the procedures of Art. 38.22 §3 were not followed in the taking of the alleged oral statement(s) of the Defendant.

. . . .

That the admission of any oral statement(s) or any evidence or testimony developed as a result of the written statement(s) would therefore violate the Defendant's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the *United States Constitution*; Art. I, §§9 and 10 of the *Texas Constitution*; and *Tex. Code Crim. Pro.* Arts. 1.05, 38.22 and 38.23.

. . . .

[T]he Defendant respectfully prays that this Honorable Court will conduct a pre[]trial hearing on this motion, and after hearing evidence, that this Honorable Court will order any and all confessions, admissions, refusals and oral statements taken from the Defendant by law enforcement officers as well as any testimony or evidence developed as a result of such illegal statements or confessions suppressed for the aforementioned reasons . . . .

(Emphasis in original.)

At the hearing on his motion to suppress, Galvan's attorney stated that "the only pretrial matter we had was the one that we talked about Friday in which we had filed a motion to suppress any of the—those oral statements, especially the ones out there at the time of his arrest in the parking lot."[2] Seeking to clarify the subject of the hearing, the State declared, "I had been under the impression that what [Galvan's attorney] wanted to suppress was the confession. What he just referenced was the statements made in the parking lot." Galvan's attorney replied, "Right. I have the oral statement that he made out there in the motion." Shortly thereafter, the State again sought clarification, stating, "For clarification, if we are not going to be talking about the confession this morning, I can probably release [two witnesses]. But I need to make sure that is the case before I do."

_____

[2] There is no record of the "Friday" conversation included in the appellate record before this Court.

Galvan's attorney responded, "That's fine." The trial court then declared, "That's the case. Thank you. Who is your first witness."

The hearing proceeded, and almost all of the testimony elicited by both parties related to whether Galvan was intoxicated at the time he made the parking-lot statements. There was, however, brief testimony relating to Galvan's conversation with Akin regarding his alleged request for an attorney. On direct examination, Akin stated that Galvan asked her whether he needed an attorney, to which she replied that it was up to him. Galvan responded that "he was probably going to want one." On cross examination, Galvan's attorney asked Akin whether she had relayed Galvan's statement to Lee, and she stated that she had. No further testimony regarding Galvan's alleged request for an attorney was presented during the suppression hearing.

At the end of the hearing, following the last witness, the State's closing argument focused on the law concerning statements made by intoxicated individuals, which appeared to be Galvan's primary argument in favor of his motion to suppress. After the State's argument, the following colloquy took place:

> The Court: So is that the issue, what you are arguing?
>
> [Galvan's Attorney]: No, Your Honor. There was not a lot of—there was no evidence presented by the defense on that issue [Galvan's intoxication].
>
> [The State]: Okay. Then I am going by what [Galvan's] attorney had indicated on Friday. I thought that this was going to be a hearing on confession based on—
>
> The Court: But it is not. Let him argue, see what he is going to say. See if you need to respond.

Galvan's attorney proceeded to argue that:

> Basically, what we are saying is, number 1, the officer testified to that

[sic] his emotional state, his eyes were very wide. He did not know what was causing this. So[,] if that's the case, if he is very emotional and upset at the time that he is being arrested or being Mirandized [sic], then I believe that they have not shown that they complied with the law that he understood what he was being read. Also, if we recall, Sergeant [Akin] even says that he probably wanted an attorney. We don't know if that's true or not. We have not even got to that point. We won't get to that point until we actually hear if he has what she said in her notes but from what was said here, a person is just read his rights. I think that the law is very clear that that person has to have understood his rights and waive[d] those rights and continue[d] talking or saying anything. So from that basic standpoint, we are saying anything that was said out there at the scene concerning what he did, where "she deserved it", [sic] things like this, should be suppressed.

The trial court denied Galvan's motion to suppress.

During the trial, the State sought to introduce Galvan's signed waiver and video-taped confession. First, the State questioned Lee about his conversation with Galvan, where Lee told Galvan that because Galvan had requested an attorney, Lee could no longer speak with Galvan unless Galvan told the detectives that he wanted to speak with them. Galvan then stated that he wanted to speak with Lee, and Lee *Mirandized* him by recording on video Galvan's signing the *Miranda* warnings. *See Miranda*, 384 U.S. at 444. When the State attempted to introduce the written and signed *Miranda* warnings, Galvan's attorney took Lee on voir dire to develop testimony regarding the magistrate's "inmate medical screening report," which was completed about an hour after Lee's interaction with Galvan and which indicated that Galvan was under the influence of either drugs or alcohol.[3] Lee testified that Galvan "admitted to drug use[,]" but that Galvan "would respond to [Lee's questions] and answer the questions," and it "seemed like he was answering the questions okay." After receiving permission to publish the "inmate medical screening report" to the

---

[3] Further testimony revealed that the person who checked the "under the influence" box on the "inmate medical screening report" was a jailer at the city jail and not the magistrate before whom Galvan appeared.

jury, Galvan's attorney stated, "Your Honor, with that, we would object to any further testimony from this witness concerning any statement or anything else that was done by Mr. Galvan."

Following this objection, the trial court took a break, and outside the presence of the jury but still on the record, the trial court entertained arguments from counsel concerning further testimony from Lee. A lengthy discussion took place regarding Galvan's sobriety at the time of his conversation with Lee. Afterward, the trial court initiated a discussion about whether Galvan's confession resulted from police malfeasance after he requested an attorney. The State argued that Lee had done nothing improper prior to Galvan's waiver of his right to an attorney.

The trial court expressed its concern with case law that provides that even after a defendant has requested counsel, the police may continue to question him, so long as the defendant initiates the conversation. The trial court stated, "But it sure makes it fuzzy because all those cases are very fact specific[,] and it depends on the facts. It does not help matters, you know, when you are having these kinds of situations." Galvan's attorney only asked whether the confession was made before or after the "inmate medical screening report." The trial court then asked the State, "Where are we headed? We are going to continue with the evidence before the jury on whether this defendant understood? Is that where we are at?" The State responded, "That would be my intention[,] if that's all right [sic] with you." Galvan's attorney then declared, "Well, my objection was—my objection was nothing can go further from him[,]" to which the trial court replied:

> It depends on the facts. My comment about that is not necessarily indicating on how I am going to rule. Just that these things become so messy when we

start doing things. So is that something we are going to submit to the jury? I need to figure out what we are doing right now . . . I am just trying to figure out where we are headed."

Next, the State expressed its intention "to continue to elicit testimony from Detective Lee about the circumstances leading up to and the warnings about [Galvan's] confession." Galvan's counsel responded, "Well, I object to that. I have no control." The State continued its direct examination of Lee, who discussed the circumstances surrounding Galvan's confession. The trial court admitted Galvan's signed waiver, which was published, without objection, to the jury. Lee then testified that, on video, he reiterated his previous statements to Galvan concerning the procedure by which Galvan could talk to him after Galvan had requested an attorney. The State then sought the admission of the videotape, but it passed the witness prior to the trial court's ruling on the admissibility of the video.

On cross-examination, Galvan's attorney questioned Lee about the procedure he followed with Galvan after Galvan had requested an attorney. Galvan's attorney's questions covered two topics: (1) whether Lee did anything to coerce Galvan to talk after Galvan had requested an attorney; and (2) whether Galvan appeared to be under the influence leading up to and during his waiver and confession.

After the cross-examination, the State and Galvan's attorney approached the bench. The State indicated it was going to introduce the video, and Galvan's attorney stated, "I made my objections." The trial court overruled the objection, declaring, "I am going to overrule the objection. I see a problem with the situation but the case law sets out based on these facts what is allowed."

10

On appeal, the State contends that Galvan's motion to dismiss was too general to preserve error and that his trial counsel's objections during the trial also failed to preserve the error Galvan now complains about on appeal. We agree.

As the court of criminal appeals noted in *Swain*, "global statements" in a pretrial motion to suppress are not sufficient to preserve arguments for appeal. 181 S.W.3d at 365. In *Swain*, in his motion to suppress, the defendant "argued '[t]hat any statements made by Defendant were obtained in violation of his right to counsel and his right against self-incrimination as guaranteed by U.S. Const. amends. V, VI, and XIV, and Tex. Const. art. I, §§ 10 and 19[,]'" and "generally argued in his motion to suppress that his statements were inadmissible under Article 38.23." *Id.* The court of criminals appeals stated:

> These arguments were global in nature and contained little more than citations to constitutional and statutory provisions. At the hearing on the motion to suppress, appellant failed to complain about being questioned after asserting his right to counsel, and instead simply objected that his statements were inadmissible because the police illegally arrested him and failed to comply with the requirements of Articles 38.22, 14.03, and 14.06. Appellant's global statements in his pretrial motion to suppress were not sufficiently specific to preserve the arguments he now makes on appeal.

*Id.* Therefore, in cases like the one before us, "a party waives error when (1) a suppression motion makes *global arguments* citing little more than constitutional and statutory provisions and (2) fails to argue any specific grounds for suppressing evidence at the suppression hearing." *Cisneros v. State*, 290 S.W.3d 457, 462 (Tex. App.–Houston [14th Dist.] 2009, pet. granted) (emphasis in original) (citing *Swain*, 181 S.W.3d at 365).

In the present case, not only did Galvan make "global arguments" in his motion to suppress, at the suppression hearing and at trial, he failed to object to the admissibility of his confession based on the detectives continuing to question him after he invoked his right

11

to counsel.[4] Because Galvan failed to argue in his motion to suppress, the hearing on his motion to suppress, and during the trial that his confession was inadmissible because the detectives continued the interrogation after he requested the assistance of counsel, we conclude that he did not preserve this issue for our review. *See id.*; *see also* TEX. R. APP. P. 33.1(a)(1)(A). Therefore, we do not reach the merits of his appellate complaint.

### III. CONCLUSION

Having found that Galvan failed to properly preserve his appellate issue, we affirm the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
See TEX. R. APP. P. 47.2(b)

Delivered and filed the
24th day of June, 2010.

---

[4] Because we conclude that Galvan waived his appellate issue, we do not reach the merits of his appeal, including his argument that he had properly invoked his right to counsel prior to Lee's comments to him in the holding cell.