

# NUMBER 13-22-00071-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| CASSIUS DWAYNE CLAY, | Appellant, |
|---|---|
| v. | |
| THE STATE OF TEXAS, | Appellee. |

## On appeal from the 24th District Court
of Jackson County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva
Memorandum Opinion by Justice Silva**

Appellant Cassius Dwayne Clay appeals his convictions for aggravated assault with a deadly weapon against a family member, a first-degree felony, continuous family violence, a third-degree felony, and unlawful possession of a firearm by a felon, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 22.02(b)(1) (aggravated assault), 25.11(a), (e) (continuous family violence), 46.04(a), (e) (unlawful possession of a firearm); *see also*

TEX. FAM. CODE ANN. §§ 71.0021(b), 71.003, 71.005. By a single issue, Clay argues the trial court erred by admitting a letter allegedly written by him to the complainant because it was not properly authenticated. *See* TEX. R. EVID. 901. We affirm.

## I. BACKGROUND

On December 15, 2020, a grand jury indicted Clay for aggravated assault with a deadly weapon against a family member, continuous family violence, and unlawful possession of a firearm by a felon. The indictment included three enhancement paragraphs for prior felony convictions, with the third enhancement paragraph indicating it applied only to the offenses of aggravated assault and continuous family violence. *See* TEX. PENAL CODE ANN. § 12.42(d).

At trial, Edna Police Department (EPD) Officer Bridget Bustamonte testified that she and EPD Officer Nathan Besler responded to a call for a domestic disturbance at approximately 10:15 p.m. on November 23, 2020. Jackson County Sheriff's Office Deputy Timothy Gonzales arrived on scene after Officers Bustamonte and Besler. Officers immediately made contact with the complainant, Jeanna Ennels, who notified the officers that she had been shot by Clay. Deputy Gonzales examined Ennels and observed a bullet wound "[o]n the right side of her neck[,] behind her ear." While on scene, Officer Bustamonte recovered a small .22 caliber pistol.

Ennels testified that she met Clay through her friend, and she dated Clay for a couple of weeks before they moved in together. According to Ennels, Clay was violent towards her before the alleged shooting, including assaulting her on November 13, 2020. Following the November 13 incident, EPD issued a criminal trespass warning against

2

Clay that protected Ennels's apartment. Ennels thereafter testified to the events leading up to the shooting on November 23. Ennels elaborated that while she was on the phone with Clay, he overheard an exchange between her and a coworker and accused her of flirting with him. While driving home from work, Ennels's vehicle ran out of gas, prompting her to ask Clay to pick her up to get fuel. After adding fuel, her vehicle stalled again, and she asked for Clay's assistance once more. However, "by this time, [Clay] was agitated," and, instead of taking her to the gas station, Clay drove her down an unknown road for "at least . . . thirty minutes" while calling her obscene names. Ennels attempted to jump out of the car twice, but each time she opened the door, he sped up. Ennels told Clay the relationship was over which prompted him to "backhand[] [her] in [her] mouth" causing her lips to swell. When Clay finally stopped the vehicle, Ennels ran out and approached another vehicle whose driver ended up taking her to the sheriff's office. A sheriff's deputy drove Ennels to her apartment complex, and she went to a friend's apartment in the same complex.

According to Ennels, she eventually went to her own apartment but had to request for maintenance to let her in and change her locks because Clay had her keys. After about two hours of waiting, Ennels saw Clay leave his aunt's apartment which was in the same building as Ennels's. Although Ennels was hiding, Clay spotted her and walked towards her. Ennels tried running, but "before [she] knew it[,] he had [her] already." Ennels testified that Clay dragged her by her coat to the walkway of the apartment building, and she heard a pop that "was so loud [her] ear started ringing." Ennels felt a "jolt in [her] chest," "[l]ike as if somebody punched [her]." Ennels testified that her "body got real hot,"

3

and she was "hollering:" "[Y]ou shot me, you shot me." Ennels later testified that the bullet traveled from behind her ear into her chest. According to Ennels, doctors were unable to remove the bullet due to its proximity to her heart. Ennels further explained that after shooting her, Clay began "punching [her] in [her] head." Clay was dragging Ennels to another place on the property when the officers arrived.

Relevant to this appeal, the State offered an exhibit which purported to be a handwritten letter mailed from Clay to Ennels, sent from the Jackson County Detention Center where Clay was housed. Although the letter was addressed by name to Clay's cousin, the letter itself was mailed to Ennels's home address. Prior to its admission, the following colloquy occurred:

[Defense]: Your Honor, I am going to object to relevance here and— yeah, relevance, Your Honor.

. . . .

[During bench conference:]

[Defense]: This doesn't pertain to any counts, your Honor. It may be relevant punishment evidence[,] but it doesn't pertain to any counts.

[State]: Your Honor, consciousness of guilt is relevant to every count at all times.

The Court: I'm going to sustain—I am going to overrule the objection. And you may proceed, [State].

. . . .

[Defense]: It's—it's inadmissible because it's unclear and it will cause jury confusion. It's not clear that [shooting Ennels is] what it's referring to and it's written to another person. So[,] it's going to cause jury confusion, and that's my objection.

The Court: Okay. I have reviewed the letter. It appears clearly to be directed at [Ennels]. It is directed to her address. And the

4

recitations contained in the letter are further indicia that it is intended to be a communication with [Ennels].

So[,] I am going to overrule your objection to [the letter].

Ennels testified that the letter was from Clay and affirmed that the exhibit was a fair and accurate copy of the letter as she received it. The letter included statements referencing the alleged assault including, "I didn't wake up that morning with the intent to shoot you when you got home[.]" The letter also contained multiple references to a past dating relationship between Clay and the letter's recipient.

The State called sixteen witnesses and admitted approximately 140 exhibits during the guilt-or-innocence phase of trial. The jury found Clay guilty on all three counts in the indictment, and the trial court subsequently sentenced him to seventy-five years' confinement for each offense, to run concurrently.[1] This appeal followed.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

### A.    Preservation of Error

On appeal, Clay argues the trial court erred by admitting the letter because the State failed to properly authenticate it as a letter written by him and such error caused him harm. Before addressing the merits of his argument, we must consider whether Clay failed to preserve this error for review as the State argues. *See* TEX. R. APP. P. 33.1(a)(1).

"To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired." *Simmons v. State*, 288 S.W.3d 72, 77 (Tex. App.—Houston [1st Dist.] 2009, pet.

---

[1] The trial court found the enhancement paragraphs in the indictment to be "true." Thus, each offense's punishment range was enhanced to 25–99 years based on Clay's habitual felony offender status. *See* TEX. PENAL CODE ANN. § 12.42(d).

5

ref'd) (citing TEX. R. APP. P. 33.1(a)(1)). In addition, the party's "contention must comport with the specific objection made at trial." *Id.* (citing *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002)). In other words, "[a]n objection stating one legal theory may not be used to support a different legal theory on appeal." *Id.* (citing *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)). However, a party may use "a general or imprecise objection" "where the correct ground for exclusion was obvious to the judge and opposing counsel." *Lankston v. State*, 827 S.W.2d 907, 908 (Tex. Crim. App. 1992) (quoting *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977)). Requiring a party to inform the court "what he wants [and] why he thinks he is entitled to it . . . clearly enough for the [trial court] to understand him . . . gives the trial [court] and the opposing party an opportunity to correct the error." *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting *Lankston*, 827 S.W.2d at 909). When determining whether a complaint is preserved for appellate review, "we consider the context in which the complaint was made and the parties' shared understanding at that time." *Id.*

## B.    Authentication

As a condition precedent to admissibility, the proponent of evidence must show that it is "authentically what its proponent claims it to be." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) (citing TEX. R. EVID. 901(a)). "The ultimate question [of] whether an item of evidence is what its proponent claims then becomes a question for the fact[]finder—the jury, in a jury trial." *Id.* However, the trial court must perform a gate-keeping function to determine "whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has

6

proffered is authentic." *Id.*; *see* TEX. R. EVID. 104(a), 901(a). A trial court's ruling on a preliminary question, such as authenticity, is reviewed for an abuse of discretion. *Tienda*, 358 S.W.3d at 638. "If the trial court's ruling that a jury could reasonably find proffered evidence authentic is at least 'within the zone of reasonable disagreement,' a reviewing court should not interfere." *Id.* (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (opinion on reh'g)).

"Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." *Id.*; TEX. R. EVID. 901(b) (providing examples of evidence satisfying the prerequisite of authentication). In addition to the preceding, a writing may be authenticated based on "[a] nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation." TEX. R. EVID. 901(b)(2).

### III. ANALYSIS

Clay argues that his objection to the letter at trial was "sufficient to direct the trial court's attention to the complaint and thus adequate to preserve the complaint for review." Clay cites *Hislop v. State*, wherein our sister court determined that a hearsay objection to a letter allegedly written by the defendant was sufficient to preserve for review a complaint as to its authentication. 64 S.W.3d 544, 546 (Tex. App.—Texarkana 2001, no pet.). Notably, Hislop's objection was phrased: "Your Honor, until further evidence is exhibited to show *who wrote these letters*, I'm going to object to their content being hearsay." *Id.* at 545 (emphasis added). The appellate court noted that a letter allegedly written by

defendant could not be hearsay because it would "fall[] within the category of admissions by [the defendant] and is therefore not hearsay." *Id.* at 545; *see* TEX. R. EVID. 801(e)(2) (excluding statements by a party-opponent from the definition of hearsay). Like Clay's argument on appeal, Hislop argued "that the entire basis for his objection was the State's failure at that point to lay a predicate for the introduction of the letter to show that [he] was its author." *Hislop*, 64 S.W.3d at 545. Thus, the *Hislop* Court reasoned that the objection was "sufficient to direct the trial court's attention to the complaint and thus adequate to preserve the complaint for review." *Id.* at 546.

We find *Hislop* to be inapposite. Here, Clay repeatedly objected that the letter was not relevant; he did not present a complaint that the foundation was insufficient to demonstrate that he wrote the letter. At most, Clay posited that the letter may confuse the jury because it was addressed to a person other than Ennels, and it was unclear what situation the letter was "referring to." Conceivably, Clay could have been arguing that the letter's probative value was substantially outweighed by its probative value by "confusing the issues" or "misleading the jury." *See* TEX. R. EVID. 403. However, it cannot be said that Clay's objection clearly challenged the identity of the letter's author, i.e., whether the letter was what the State claimed it was: a letter written by Clay. *See id.* R. 901(a); *Tienda*, 358 S.W.3d at 638. If Clay intended to question the authenticity of the document, his objection was not so obvious or clear enough that the trial court or the State could understand him while they were able to correct the error. *See Pena*, 285 S.W.3d at 464; *Lankston*, 827 S.W.2d at 909. Because his complaint on appeal does not comport with his objection at

8

trial, Clay's sole issue is overruled as unpreserved.[2]  *See* TEX. R. APP. P. 33.1(a)(1); *Pena*, 285 S.W.3d at 464; *Lankston*, 827 S.W.2d at 909.

## IV.  CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
28th day of July, 2022.

---

[2] Under Texas Rule of Evidence 901(b)(4), evidence may be authenticated by "[its] appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." TEX. R. EVID. 901(b)(4); *see Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Here, the contents of the letter contained references to the alleged shooting and a romantic relationship, which were consistent with Ennels's testimony about the event and her relationship with Clay. *See* TEX. R. EVID. 901(b)(4). Further, the letter was sent from the same jail where Clay was housed while he was awaiting trial and addressed with his name on it. *See id.* Because the determination of whether the evidence is authentic rests with the jury, we cannot say the trial court's decision to admit the letter would have been outside the zone of reasonable disagreement such that would constitute an abuse of discretion of its gate-keeping function. *See Tienda*, 358 S.W.3d at 637–38; *see also* TEX. R. EVID. 104(a); 901(b)(4).

9