

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00484-CR

———————————————————

JOSHUA ALLEN AUSTIN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1509312D

---

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

Appellant Joshua Allen Austin appeals his conviction by a jury for continuous sexual abuse of a child. The jury assessed punishment at 30 years' confinement in the Texas Department of Criminal Justice. The trial court rendered judgment in accordance with the jury's guilt and punishment verdicts.

Appellant raises a single point on appeal. He contends that the trial court impaired his right to present a "full and vital" defense when it restricted his right to confront a witness through cross-examination. Specifically, he argues that the trial court improperly denied him the right to cross-examine the forensic interviewer who had interviewed the preteen complainant. He claims that he was deprived of the right to cross-examine the interviewer about the complainant's psychiatric treatment history and to use that history to challenge the forensic interviewer's testimony about how an abuser might "groom" his victim. In essence, Appellant claims that the cross-examination was needed to rebut a claim that he had suggested homeschooling the complainant to afford him an opportunity to abuse her when it was her psychiatric problems that had caused her to be unable to attend school.

We hold that Appellant has failed to preserve error on the point he raises on appeal. The argument that Appellant makes to us is not the same as the argument that he raised in the trial court. Further, the record did not inform the trial court of the substance of the offer that Appellant had sought to make.

Even if we reached the merits of Appellant's argument, we would hold that the trial court did not place such restrictions on Appellant's cross-examination of the forensic interviewer that he was deprived of the ability to present a vital defensive theory.

We therefore affirm the judgment of the trial court.

## II.  Background

Appellant does not challenge the sufficiency of the evidence.  Thus, we offer only an abbreviated summary of the underlying facts presented at trial and the trial court's Rule 412 hearing.

The complainant was a preteen, who made physical complaints that caused her to be taken to the hospital.  A physical examination revealed that she was pregnant.

Initially, the complainant stated that the father was a boy her age. Subsequently, she made a statement that her stepfather, Appellant, was the father. The complainant's child was not carried to term, and no genetic testing was performed to determine the identity of the child's father.

After the complainant's pregnancy prompted investigations, two forensic interviews of the complainant were conducted.  The complainant's statements during those interviews also diverged as to the identity of the father.  In the first, the complainant identified a boy who was her age as the father.  In the second interview, she described a sexual history with her stepfather.

3

The trial spanned several days and included testimony from the complainant; various members of her family, including her mother and her aunt; law-enforcement and child-welfare officials, including an investigator for Child Protective Services, a forensic interviewer, and a detective; and Appellant and various members of his family.

The trial court conducted a Rule 412 hearing and ruled that certain evidence would not be admissible. The trial court also sustained a number of objections when Appellant's counsel sought to cross-examine witnesses about evidence that was the subject of the Rule 412 hearing and that delved into psychiatric treatment received by the complainant.

## III. Analysis

### A. Appellant has failed to preserve error for the complaint that he makes on appeal.

Our first challenge is to address the dissonance between the argument made in Appellant's brief and the argument he made to the trial court. The differences between the arguments impact whether Appellant failed to preserve error by not giving the trial court the opportunity to rule on the argument that he makes to us. We hold that the trial court was never presented with the argument that Appellant makes on appeal with sufficient clarity for that court to understand why it was allegedly making the error that Appellant now contends it made. Further, Appellant's offer of proof never addressed the witness who is now the focus of his appellate argument,

4

demonstrated that she had a level of knowledge that made a cross-examination of her viable on the topic at issue, or explained why Appellant had not attempted to develop the topic during the original cross-examination of the witness.

The focus of Appellant's argument on appeal is that the trial court should have permitted the forensic interviewer who sponsored and described the complainant's two forensic interviews to be cross-examined about the complainant's psychiatric treatment history.[1] This argument focuses on the theory that the forensic interviewer explained the grooming process that an abuser might use before sexually abusing a child. Appellant's theory is premised on the fact that the forensic interviewer explained that one tactic that might be used by an abuser is to isolate the child; here, Appellant claims that the forensic interviewer's testimony about the isolation tactic used in grooming suggested that Appellant had isolated the complainant by homeschooling her. Appellant's theory of the relevance of the complainant's psychiatric treatment history is that it provided a non-nefarious reason why the complainant was homeschooled—her psychiatric issues required her removal from a public-school environment.

This theory is at odds with the reasons offered by Appellant's counsel when she made an offer of proof and argued for the admission of the complainant's psychiatric treatment history. That argument focused on the theory that the

---

[1]The forensic interviewer described her role as "someone who is professionally trained to speak to children, interview children about allegations of abuse, as well as adults who have, like, cognitive or communication delays."

5

complainant's mother had left a false impression that the child had no mental or behavioral issues. The offer of proof did not specify a particular witness from whom the testimony should be elicited. The offer also did not focus on the forensic interviewer or mention—much less explain—why she in particular should be cross-examined on the issue of the complainant's psychiatric treatment history. Defense counsel did reference needing testimony to explain why the complainant was homeschooled, but that explanation was not tied to the testimony of the forensic interviewer.

Our specific concern about the preservation is that to the extent the argument that Appellant presents to us has any validity, the trial court was never presented with this argument and thus was never given a reason why the forensic interviewer should have been cross-examined on the complainant's psychiatric treatment history. Appellant articulated the legal basis for the offer but did not tell the trial court how, in the context of the forensic interviewer's testimony, a cross-examination of her about the complainant's psychiatric treatment history was relevant or vital to his presentation of a defensive theory. Nor did the objection explain the need to cross-examine the forensic interviewer in particular on this topic when she had no independent knowledge of the complainant's psychiatric treatment history and when all that she knew about that history the jury also knew because they had heard the recordings of the forensic interviews in their entirety.

Generally, the complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."). To determine whether the complaint on appeal conforms to that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Clark*, 365 S.W.3d at 339; *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009); *Pena*, 285 S.W.3d at 464.

More specifically, to preserve error on a claim that the trial court improperly restricted cross-examination, an appellant has a two-pronged burden. The first prong is to establish that the trial court understood that the legal basis for the objection is that a ruling had infringed on the defendant's Sixth Amendment rights by limiting his ability to confront a witness. *Golliday v. State*, 560 S.W.3d 664, 669 (Tex. Crim. App. 2018) (stating that under Texas Rule of Appellate Procedure 33.1, "Appellant was responsible for preserving the error he sought to raise on appeal by specifically articulating the legal basis for his proffer at trial" (citing *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005))). We assume that Appellant gave the trial court an adequate legal ground for his complaint.

7

The second prong of preservation stems from Texas Rule of Evidence 103, which ensures that a trial court knows what the objecting party wants to offer: "if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Tex. R. Evid. 103(a)(2). This prong of preservation has alternative approaches depending on the appellant's complaint.

If the offer relates to excluded evidence, an offer must give the trial court an explanation why the evidence is needed. *Golliday*, 560 S.W.3d at 669 (citing *Holmes v. State*, 323 S.W.3d 163, 166–67, 171 (Tex. Crim. App. 2009)). The court of criminal appeals has described the rationale and burden to meet the second prong when the question is the exclusion of evidence:

> Rule of Evidence 103(a)(2) limits the scope of issues which may be appealed when evidence is limited or excluded. "Error may not be predicated upon a ruling [that] . . . excludes evidence unless a substantial right of the party is affected, and . . . *the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked.*" The offer of proof may be in question-and-answer form or in the form of a concise statement by counsel. "*An offer of proof to be accomplished by counsel's concise statement must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible.*" The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. A secondary purpose is to permit the trial [court] to reconsider [its] ruling in light of the actual evidence.

*Holmes*, 323 S.W.3d at 168 (emphasis added) (footnotes omitted).

The other alternative to meeting the second prong of preservation prescribed by Rule 103 deals with a restriction on the scope of cross-examination. *Id.* In that circumstance, an appellant bears a different burden:

> "[T]he defendant need not show what his cross-examination of the witness would have affirmatively established; *he must merely establish what general subject matter he desired to examine the witness about during his cross-examination and, if challenged, show on the record why such should be admitted into evidence.*" In such a case[,] the trial court's ruling has prevented a defendant from questioning a State's witness about subject matters which affect the witness's credibility, that is, matters which might show malice, ill feeling, ill will, bias, prejudice, or animus.

*Id.* (emphasis added) (footnote omitted).

It is with respect to the second prong of preservation that we find the flaw, and that flaw exists no matter whether Appellant's argument is that the trial court excluded evidence of the complainant's psychiatric treatment history or restricted the scope of cross-examination of the forensic interviewer. First, the need to interrogate the forensic interviewer about the complainant's psychiatric treatment history was never made clear to the trial court during the offer of proof. Here, the forensic interviewer's name came up in two instances over the two days that the offer occurred. Appellant's trial counsel first referenced the need to cross-examine the forensic interviewer not about the complainant's psychiatric history but about the complainant's alleged prior sexual misconduct, which is not the basis of Appellant's appellate complaint.[2]

---

[2]The first exchange that mentioned the forensic interviewer is as follows:

9

Appellant's counsel took up the matter again the next day and prefaced her offer by saying only that "[w]e were discussing the cross-examination limitation on the forensic interviewer and further the limitations on my cross-examination, not allowing me to comment on the family law case in any matter." During the offer of proof on the second day, Appellant's counsel never mentioned the specific need to cross-examine the forensic interviewer on the complainant's psychiatric treatment history. The only time that the forensic interviewer's name was mentioned occurred during the following exchange:

> [DEFENSE COUNSEL]: Well, each of the State's witnesses have indicated that it was Joshua Austin's idea to pull [the complainant] out of public school.

---

> I believe that this incident -- these incidents of July of 2016 would be relevant to consideration by this jury to rebut several assertions made by the State and to show the character of the alleged victim in this case. And Rule 412(a) states that, of course, that specific instances of conduct of [the] alleged victim's sexual behavior is not admissible unless it is necessary to rebut or explain scientific or medical evidence offered by the prosecutor.

> The evidence offered by the prosecutor through the[] . . . forensic interview[er], Alexis Chase Harrison, indicated [that] she [had] described for the jury as an expert several factors that she considers in determining -- basically, in her -- the substance of her testimony was that she felt [the complainant's] allegations were true based on her reaction.

> I was not allowed to cross-examine that witness regarding *any prior sexual misconduct in which that witness was a perpetrator*, and I feel [that] had I been allowed to proffer that -- elicit that testimony on cross-examination, it would have -- in essence, I was unable to conduct a full cross-examination of that witness based on these reports. [Emphasis added.]

10

THE COURT: Well, it was, he said it was.

[DEFENSE COUNSEL]: And the impression that the State has elicited is that he's done this in an attempt to isolate her. Alexis Chase Harrison [(the forensic interviewer).]

When challenged to explain the interrelation between the complainant's psychiatric history and grooming, Appellant's counsel did not offer one but shifted to a justification that the evidence rebutted the impression that she was a normal child.

Thus, the only specific topic that Appellant told the trial court that he needed to cross-examine the forensic interviewer on was regarding the complainant's alleged prior sexual misconduct. Perhaps out of fear of the restrictions of Rule 412,[3] Appellant refocuses his appellate argument to argue that the cross-examination should have included the complainant's psychiatric history. But Appellant's trial counsel never told the trial court the point that he attempts to make on appeal: his alleged need to cross-examine the forensic interviewer about the complainant's psychiatric treatment history in order to challenge the forensic interviewer's testimony on grooming. Thus, the trial court never had the opportunity that an offer of proof should provide—an understanding of what Appellant wanted, why any prior rulings were in error, and how those rulings should be addressed to correct them.

Nor was the argument that Appellant now makes apparent from the context of the forensic interviewer's testimony. Nothing in the forensic interviewer's testimony

---

[3]*See* Tex. R. Evid. 412 (restricting admissibility of prior sexual behavior by victim in sexual assault cases).

communicated that she was a candidate to testify or be cross-examined about the complainant's psychiatric treatment history. The forensic interviewer had no independent personal knowledge of the complainant's psychiatric treatment. The only thing that the forensic interviewer knew about the complainant's background before conducting the interviews came from a request form that had "about two sentences about the -- about potential allegations and then about what -- one more sentence about potential additional allegations." Whatever the forensic interviewer knew of the complainant's psychiatric treatment history came from what the complainant had said during the interviews. The jury heard exactly what the forensic interviewer had heard about that history because the interviews were played in their entirety for the jury.

Further, during her original cross-examination of the forensic interviewer, Appellant's counsel never attempted to elicit any testimony about the complainant's psychiatric treatment history or to tie the grooming process to her psychiatric history. Though the forensic interviewer described grooming as requiring "unfettered access" to a child, she made no reference to homeschooling as part of her answer.[4]

---

[4]The forensic interviewer described the grooming process as follows:

Q. I want to talk to you a little bit about the dynamics of child sexual abuse. Is there a term in your profession that's used called "grooming"?

A. Yes.

Q. What's that mean?

12

Appellant's counsel did ask a question about homeschooling in regard to the forensic interviewer's testimony about grooming. But that question had nothing to do with the complainant's psychiatric treatment history, and the interviewer agreed with the premise of the question:

> Q. (BY [DEFENSE COUNSEL]) So, reason to home-school could either be environmental grooming like you testified to or it could be like [the complainant] said and she was being bullied at school and getting in trouble at school, yes?
>
> A. It could be, yes.

We do not see how what was said during the offer of proof gave the trial court any inkling that it was error to deny a cross-examination of the forensic interviewer on the complainant's psychiatric treatment history when (1) the trial court was not told that Appellant had wanted to examine this particular witness on the topic; (2) the trial court was not told how the lack of that examination had impaired Appellant's defense when the forensic interviewer had no independent knowledge of that history and when all that she knew about that history had been shared with the jury; (3) no questions were asked during the original cross-examination of the forensic interviewer

---

A. So grooming is the unfettered access a person has to have to commit this type of crime. Grooming starts with the environment. The environment is the protective caregiver, the other siblings, the coaches, the teachers, anyone [who is] around the child. When a perpetrator starts with the environment, it's to reduce the probability that [he is] going to get caught or that when the child reports, that [she] will be believed. And so the grooming process starts before -- on those peripherals, right, and those -- those family dynamics or in those schools or churches.

13

about the history; and (4) the forensic interviewer had agreed on cross-examination that homeschooling the complainant could have had a legitimate purpose. If viewed as the erroneous admission of evidence, the trial court was never told what additional evidence the forensic interviewer had to offer. If viewed as a restriction on cross-examination, the trial court was never told how the questions would impact the forensic interviewer's credibility, why the questions were vital when not asked during the original cross-examination, or why the question that was asked did not fulfill Appellant's need to challenge the forensic interviewer's credibility.

**B. Even if Appellant had preserved his argument, we would hold that the trial court did not prevent him from presenting a full and vital defense.**

At trial, Appellant generally premised his argument on the contention that without knowing the full extent of the complainant's psychiatric treatment history, the jury was left with the impression that she was a child without mental or behavioral issues. On appeal, Appellant's argument turns on the contention that without the ability to cross-examine the forensic interviewer on the complainant's psychiatric treatment history, the jury was left with a misimpression of why Appellant had suggested that she be homeschooled.

But, as we will amplify, an appellant's ability to conceive a hypothetical justification for the questions that he wants to ask on cross-examination does not deprive the trial court of the discretion to restrict cross-examination. The trial court has many justifications that it can rely on to restrict cross-examination, and an

14

appellant has no grounds to complain if he can still present a vital defense even with the restrictions in place.

Here, the trial court did not abuse its discretion by not permitting a fuller description of the types of psychiatric treatment that the complainant had received or by precluding Appellant from cross-examining the forensic interviewer on the topic. The trial court pointed out that the cross-examination and the evidence that it would introduce would be repetitive of what was already in the record. Though perhaps not to the degree desired by Appellant, the record contains numerous references to the complainant's psychiatric treatment and hardly left the impression that the complainant was untroubled. Indeed, the record contained enough evidence that Appellant's counsel made the very argument in closing that—assuming Appellant's appellate arguments were correct—would have been impermissible given the trial court's restrictions.

With respect to Appellant's argument on appeal, his counsel never even attempted to cross-examine the forensic interviewer on the topic that he now contends was so vital to his defense. He never explained to the trial court and never explains to this court how the topic of the cross-examination is more than marginally relevant. Nor does Appellant explain the viability of cross-examining the forensic interviewer on this topic because her knowledge of the complainant's psychiatric treatment history was limited to what the complainant had told her during the interviews and the entire recordings of those interviews were played for the jury. And

the conclusion that the topic would be only marginally relevant is supported by the fact that the topic was not raised with the forensic interviewer during her original cross-examination. Finally, Appellant does not explain how the inability to cross-examine the forensic interviewer impaired his defense when he was asked about the decision to homeschool the complainant and his answer did not include her psychiatric treatment history—another fact highlighted by the trial court while it was trying to understand Appellant's complaint during the offer of proof.

## 1. Standard of review and the law applicable to limits on cross-examination

A trial court's determination to exclude evidence is reviewed under an abuse-of-discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). Specifically,

> [a] trial [court] abuses [its] discretion when [its] decision falls outside the zone of reasonable disagreement. If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling.

*Id.* (footnotes omitted).

In the specific arena of limitations on the scope of cross-examination, the trial court also has the discretion to restrict the scope of the examination:

> We recognize, however, that the right to cross-examine is not unqualified. A trial judge may limit the scope and extent of cross-examination, so long as those limits do not operate to infringe upon the Confrontation Clause's guarantee of "an opportunity for effective cross-examination." The defendant is not entitled to "cross-examination that is effective in whatever way, and to whatever extent," he might wish. Trial judges retain "wide latitude" under the Confrontation Clause to

16

impose restrictions on cross-examination based on such criteria as "harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." However, although the defendant does not have an absolute right to impeach the general credibility of a witness, the Constitution could be offended if a state evidentiary rule prohibited the defendant from cross-examining a witness concerning possible motives, biases, and prejudices to such an extent he could not present a vital defensive theory.

*Id.* at 909–10.

### 2. The record contains numerous references to psychiatric treatment received by the complainant and the state of her mental health.

Appellant argued at trial that by not being able to delve into the specific nature of the complainant's psychiatric treatment, the jury was left with a misimpression that she was a normal child. On appeal, the argument pivots and crystalizes into an argument that without evidence of the complainant's psychiatric history, the jury was left with a different misimpression—that Appellant did not have a legitimate reason to homeschool the complainant:

> The trial court's denial of Appellant's ability to cross-examine [the forensic interviewer] denied the jurors the *only* opportunity to hear critical behavioral testimony regarding Complainant. *A review of the record establishes that no other testimony was offered to support the legitimate reasons to pull Complainant out of school. The jurors were left with the impression that pulling Complainant from school was part of Appellant's plan for sexual abuse.* [Emphasis added.]

The record, however, is replete with negative information about the complainant and references to her psychiatric treatment.

17

### a. References to psychiatric treatment

During the second forensic interview, the complainant told the forensic interviewer that her biological father called her a "crazy psychopathic girl." Then, the complainant indicated that she was "a little bit crazy." Next, she told the forensic interviewer that she had threatened her biological father and his wife "out of pure anger" and that they had sent her to the "mental ward." The complainant recalled the "mental ward" fondly because it was "the best time" that she had ever experienced at a hospital. She could not remember the specific year of treatment. The complainant testified that after she had been in the "mental ward," she went to a special school for people who do drugs and have other problems and was told by a counselor that she was homicidal, willing to kill, and suicidal. She then stated that "[she] had done self-harm because [she] wanted out of [her] world."

The complainant testified that certain events had occurred "when [she] got out of that outpatient treatment." The complainant also stated that "[p]eople ha[d] tried putting [her] through counseling so many times that [she had] just pushed it aside." During Appellant's testimony, he testified about treatment that the complainant had received, stating that "this was after the fact that [the complainant had] already [gone] to Sundance [for] a six-week program for a child that had been abused."

Part of the medical history collected by a nurse who had examined the complainant quotes her statement, "Well when I got out of Sundance in like February or March of 2016 . . . ." Another medical history has the following entries:

18

Medication          denies

Major Illnesses     psychiatric care 2015 – no meds since

Yet another medical history states that the complainant "has been treated for mental health problems." The same medical history has numerous entries stating that "*while living [with] father/stepmom [the complainant] was on [Z]oloft and [A]bilify.*"

### b. The complainant's description of herself

At trial, the complainant offered the following descriptions of herself and her behavior:

- She has had a very rough childhood.

- A fight with her mother caused her to be sent to live with her biological father.

- Her father has found a way to keep her out of his life.

- She described why she had moved back to Texas after living with her father in Wisconsin as follows:

Q. Basically when you moved down here, it was because your dad kicked you out, right?

A. Yeah.

Q. And -- but prior to you[r] moving down here -- well, I mean, he kicked you out because he was scared for [your brother], didn't he?

A. No, he didn't care about my brother. He was apparently terrified for the safety of his wife and the soon-to-be-born baby because I was apparently too much of a psycho, too crazy to be living in the house, and that I should be put in a psycho ward and be drugged up to the point where I can't move.

Q. Put in a psycho ward and drugged up to where you can't move?

A. Yeah.

- She had lied when she had said that her grandfather had attempted to have sex with her.

- She testified that while she was being assaulted, she liked being slightly choked because she likes pain and is "into that."

- She "lied a lot" to protect herself when she was younger.

- Her life was a "train wreck."

- She stated that in the past she had "lied more than [she had] told [the] truth."

A great deal of testimony centered around "urges" allegedly felt by the complainant and how Appellant had purported to help the complainant deal with these urges. But the officer investigating the matter reported that these urges included violent ones:

Q. Okay. And your investigation has revealed violent urges, right?

A. There was information about violent urges that was not from [the complainant].

Others testified that the complainant had been violent to other children:

Q. . . . Okay. And did you ever have any reason to consider [the complainant] to be a kid with a temper or -- or in any way violent toward other kids?

A. Yes, I have witnessed it at my house.

**3. The argument Appellant's trial counsel made based on the existing record**

After the trial court made the ruling that is the focus of this appeal, Appellant's counsel was able to make the following argument from the information that was already part of the record:

> Look at the medical records. Psychiatric treatment in Wisconsin. And [the complainant] talked to you about that or talked to [the forensic interviewer] about that in her forensic interview. She was hospitalized for violent urges, for being violent. [The complainant] told you, both on the witness stand and in her interview, her dad said she was a crazy psychopath who needed to be medicated until she couldn't move.
>
> [The complainant's mother] takes the stand and tells you, no, she's a normal child, no different than any other child. But did she have trouble? No, no more trouble than anybody else.
>
> She was placed in a psychiatric unit in Wisconsin by her father and stepmother. She was placed in a psychiatric unit less than a year later here in Fort Worth by [her mother].

**4. The trial court acted within its discretion and did not deprive Appellant of the opportunity to present a vital defense**.

As the Austin court recently held, the scope of cross-examination is not unilaterally controlled by the defendant, and the trial court has the discretion to determine what level of examination will permit a defendant to muster the evidence needed to make a defensive argument:

> The Confrontation Clause does not guarantee cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. [*Delaware v.*] *Van Arsdall*, 475 U.S. [673,] 679[, 106 S. Ct. 1431, 1435 (1986)]; *see Johnson*, 490 S.W.3d at 910 (noting that Confrontation Clause does not provide defendant "an absolute right to impeach the general credibility of a witness"); *Hammer v. State*, 296 S.W.3d 555, 562–

21

63 (Tex. Crim. App. 2009) (same). The test to determine the scope of cross-examination demanded by the Confrontation Clause is whether the defendant could present a vital defense theory without the evidence, not whether the defensive theory is as strong as it could be with the evidence. *See Johnson*, 433 S.W.3d at 557 ("[A] 'less than optimal' opportunity for cross-examination does not, of itself, violate the Sixth Amendment."). As long as the judge permits sufficient cross-examination to satisfy the Sixth Amendment, the trial judge has the ability to restrict the scope of cross-examination. *Id.* at 551–52.

*Faglie v. State*, No. 03-17-00281-CR, 2019 WL 847812, at *4 (Tex. App.—Austin Feb. 22, 2019, no pet.) (mem. op., not designated for publication); *see also Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010) (quoting *Van Arsdall*, 475 U.S. at 679, 106 S. Ct. at 1435, and stating that defendant lacks the right to "cross-examination . . . in whatever way, and to whatever extent, the defense might wish"). As we noted when discussing the standard of review, the trial court has the discretion to restrict cross-examination to address a concern for "harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Johnson*, 490 S.W.3d at 910 (quoting *Van Arsdall*, 475 U.S. at 679, 106 S. Ct. at 1435).

Appellant understandably wanted every negative fact that he could muster to attack the complainant, but that desire did not force the trial court to forfeit control of the proceedings. We see numerous reasons why the trial court had the discretion to restrict Appellant from further delving into the complainant's psychiatric treatment history and to decide that Appellant was not deprived of presenting a vital defense by the ruling.

First, the testimony was repetitive. Even if we do not hold Appellant to the argument he made in his brief and allow him to rely on the more general argument made during the offer of proof, we still fail to see how Appellant was impaired in presenting his defense. Even without clarification of the nature of the institutions in which the complainant received psychiatric treatment, the record contained abundant evidence that the complainant was troubled and had received psychiatric treatment.

Indeed, the trial court specifically noted that evidence of psychiatric treatment was already in evidence through the medical records. And Appellant's trial counsel's response to that observation was not that the medical records lacked the information but that the jury should know more details about the treatment because "unless my jurors know what Sundance is, they're -- they're not going to get the full picture as far as why she was there. And again, the -- the impression that's been left by [the complainant's mother] is that she's just a normal girl, no problems." It was a matter for the trial court to decide how much mention should be made of the peripheral issue that was already before the jury.

Also, the premise—unless the jury was told "what Sundance is," they would be left with the impression that the complainant was "just a normal girl"—is unfounded. The jury knew that the complainant had received psychiatric treatment; after all, the complainant's description of herself conveyed many of her troubles.[5]

---

[5]Appellant's attempt to use the complainant's psychiatric treatment history was also of dubious relevance from a legal standpoint.

First, the attempt to impeach the complainant's mother on this issue involved a collateral issue. The degree to which the complainant was "normal" was not directly relevant to the offense charged. As such, the trial court had the discretion to limit or stop the examination on the issue. Specifically,

> [e]vidence that is otherwise inadmissible may become admissible when a party opens the door to such evidence. A party opens the door by leaving a false impression with the jury that invites the other side to respond. But even if a party opens the door to rebuttal evidence, the trial judge still has the discretion to exclude the evidence under Rule 403. Courts generally prohibit a party from using extrinsic evidence to impeach a witness on a collateral issue. An issue is collateral if, beyond its impeachment value, a party would not "be entitled to prove it as a part of his case tending to establish his plea." Unless the witness's testimony created a false impression that is "directly relevant to the offense charged," allowing a party to delve into the issue beyond the limits of cross[-]examination wastes time and confuses the issues.

*Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009) (footnotes omitted).

Second, evidence of mental treatment is usually not admissible under Texas Rule of Evidence 608(b) unless it has a direct bearing on a witness's credibility. *See Haynes v. State*, No. 07-15-00369-CR, 2016 WL 6471346, at *6 (Tex. App.—Amarillo Oct. 31, 2016, pet. ref'd) (mem. op., not designated for publication) ("Rule 608(b) prohibits the introduction . . . of specific instances of conduct to attack a witness's credibility. Tex. R. Evid. 608. Cases finding evidence of the mental capacity of a witness admissible as impeachment evidence . . . have required that the proponent show the . . . purported impairment or disability would affect the witness's credibility." (footnote omitted)); *Scott v. State*, 162 S.W.3d 397, 401–02 (Tex. App.—Beaumont 2005, pet. ref'd) (holding that trial court did not abuse its discretion by excluding evidence that showed witness's condition—which involved a history of repeated admissions to mental hospitals and medication—was ongoing because no evidence proved that his condition affected his credibility regarding the events to which he testified); *see also Brooks v. State*, No. 01-18-00175-CR, 2019 WL 4620994, at *6–7 (Tex. App.—Houston [1st Dist.] Sept. 24, 2019, pet. filed) (stating that Texas Rule of Evidence 611 permits cross-examination of witness on relevant matters and "[c]ross-examination of a testifying State's witness to show that the witness has suffered a recent mental illness or disturbance is proper, *provided that such mental illness or disturbance is such that it might tend to reflect upon the witness's credibility*." (quoting *Virts v. State*, 739 S.W.2d 25, 30 (Tex. Crim. App. 1987) (emphasis added))). Here, Appellant

In considering the repetitiveness and the marginal relevance of the evidence, the trial court also had the right to balance the need to recall witnesses to delve into the complainant's psychiatric treatment history and to further extend the trial with the fact that adequate evidence of the complainant's psychiatric treatment history was in the record.

Finally, Appellant's counsel's argument to the jury confirmed that the record already contained enough evidence to make the argument that counsel had contended was so vital. Thus, from a practical standpoint, the inability to cross-examine the forensic interviewer did not hinder counsel from presenting the desired argument.

And holding Appellant to the argument he makes in his brief, we do not understand how raising the topic with the forensic interviewer was of anything more than marginal relevance. For all the reasons we have articulated above, the forensic interviewer knew nothing about the complainant's psychiatric treatment history other than what she was told during the interviews that were played for the jury. The trial court could have concluded that even Appellant did not see the line of questioning as vital when the original cross-examination of the forensic interviewer did not include a

---

did not argue that the complainant's psychiatric treatment history impacted her credibility. The trial judge could have questioned the effort to introduce the complainant's psychiatric treatment history via impeachment of the mother as a means to backdoor evidence that would not be admissible through the front door because it was not a proper attack on the complainant's credibility. This consideration also supports the trial court's decision to restrict cross-examination on the psychiatric treatment history.

question on the topic. That omission in and of itself belies that it was a vital topic that Appellant needed to address with the forensic interviewer.

Even if the trial court had been presented with the argument that Appellant makes on appeal, another aspect of the record demonstrates that the premise of why the line of cross-examination was so vital is unfounded. Without the psychiatric treatment evidence, Appellant argues that the jury was left without a challenge to the implication from the forensic interviewer's testimony that homeschooling was a part of the grooming process that gave Appellant unfettered access to the complainant.[6]

---

[6]Specifically, Appellant argues,

By denying Appellant the opportunity to cross-examine [the forensic interviewer], Appellant was unable to offer powerful evidence to clarify Complainant's background that would support taking Complainant out of public school to be home schooled for reasons other than creating an atmosphere for a compliant sexual abuse victim. Without the ability to fully cross-examine [the forensic interviewer], Appellant was denied [the opportunity] to offer the jurors a complete picture of Complainant's history of violent behavior. As his offer of proof indicates, Complainant attempted to smother her brother and was placed in a psychiatric hospital. This probative, relevant evidence was not placed in front of the jurors.

Further, Appellant was not allowed to clarify that Complainant had recently been in a psychiatric hospital, Sundance, in Fort Worth. . . . The inability to be afforded his Constitutional Due Process rights to Confrontation left the jurors with an impression that Complainant had insignificant problems. The trial court's denial to allow Appellant the opportunity to cross-examine [the forensic interviewer] and rebut this impression that he only wanted to home school her to groom her to be a victim was an egregious error.

26

This argument has a massive hole because Appellant had the opportunity to explain why he had suggested homeschooling for the complainant and that explanation did not include her psychiatric treatment history or her allegedly aberrational behavior. This disconnect demonstrates the marginal—at most—relevance of the topic that Appellant now claims that he wanted to address in his cross-examination of the forensic interviewer.

In the following exchange, Appellant had the opportunity to and did explain why he had suggested that the complainant should be homeschooled, and his explanation had nothing to do with her psychiatric treatment history:

Q.  Where did [the complainant] go to school?

A.  She started the school year in [the name of the school is omitted to protect the complainant's privacy].  Same problems that she had, same issues going on.  Getting caught in class with boys, talking to them, getting into arguments with teachers.  You know, what would be considered, I guess, normal female behavior at that age, I guess.

Q.  And what did you and [the complainant's mother] do as parents in regards to those issues?

A.  We discussed home-schooling because I was personally home-schooled for similar issues with, you know, teachers not understanding certain things or me not understanding what they were trying to present

---

This characterization failed to show the complete background of Complainant's story; therefore, the jurors were not afforded an opportunity to hear any testimony by the defense that Complainant could have been pulled out of public school because of previous violence issues that made home schooling a legitimate, viable alternative to public school.  Instead, the jurors were presented evidence without rebuttal or clarification that Appellant's home school plan was part of his method to make her a compliant victim.

27

to me. The expectations of school is a little different for people that don't quite understand the dynamic, how it's supposed to be. So I discussed -- well, I kind of put forward, I said, well, what about home-school.

Q. So home-school was your idea, correct?

A. My idea, but I had no control whether it would happen or not.

Q. And that was your idea based on personal -- on your personal experience with the home-schooling, correct?

A. Yes, ma'am.

Q. Was it your idea so that you could isolate and sexually assault [the complainant]?

A. No, ma'am.

The trial court's questioning of counsel during the offer of proof highlighted that Appellant had given his explanation for why he had suggested homeschooling the complainant. At the time Appellant's counsel made her offer of proof, the trial court noted that Appellant had given his reasons for suggesting that the complainant be homeschooled and had tried, without success, to determine the relevance of her psychiatric treatment history:

THE COURT: Well, problems, how is a child's mental problems relevant? How is that -- how [does] a child['s] having mental problem[s] illustrate that what the mother said is --

[DEFENSE COUNSEL]: *Well, . . . the State's witnesses have indicated that it was Joshua Austin's idea to pull [the complainant] out of public school.*

THE COURT: *Well, it was, he said it was.*

28

[DEFENSE COUNSEL]: And the impression that the State has elicited is that he's done this in an attempt to isolate her. [The forensic interviewer] --

THE COURT: I understand. I understand what they're saying. And your testimony was because she was having problems with school and boys at school and kids at school. So, the fact that she went to Sundance, how does that -- I don't understand -- I'm trying to understand how that is admissible.

[DEFENSE COUNSEL]: But certainly to rebut the impression that -- left by [the complainant's mother] that she's just a normal child. And then also again, it's --

THE COURT: So a normal child doesn't have mental problems? I don't understand that argument. Is that what you're saying?

[DEFENSE COUNSEL]: No. [Emphasis added.]

Appellant's argument on appeal does not acknowledge or address how he was deprived of the opportunity to present a vital defense that hinges on the argument that the complainant's psychiatric treatment history prompted her homeschooling when the reasons he offered for suggesting that course of action were not based on that history.

At the end of the day, the trial court acted within the zone of its discretion. The trial court had legitimate concerns about prolonging the trial to revisit a topic that had already been adequately addressed in the record. The questioning of the forensic interviewer about the complainant's psychiatric treatment history of which she had no independent knowledge appears of marginal relevance, both from a legal standpoint and practically, because the question was not asked when Appellant originally had the

opportunity to do so.  And finally, the argument on why the cross-examination was so vital was belied by Appellant's own testimony.  Accordingly, we overrule Appellant's sole point.

## IV.  Conclusion

Having overruled Appellant's sole point, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  November 21, 2019