Opinion issued May 7, 2020



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-19-00351-CR**

**NO. 01-19-00352-CR**

———————————

**JERI VASQUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1577878 & 1577879**

---

## O P I N I O N

Without a sentencing recommendation from the State, Jeri Vasquez pleaded

guilty to the separately charged first-degree felony offenses of (1) possession with

intent to deliver methamphetamine weighing more than 4 grams and less than 200

grams and (2) possession with intent to deliver cocaine weighing more than 4 grams and less than 200 grams.[1] Following the preparation of a presentence investigation (PSI) report, the trial court conducted a sentencing hearing at which it found Vasquez guilty of each offense and found the deadly-weapon allegation contained in the indictments to be true. The trial court sentenced Vasquez to 10 years in prison for each offense with the sentences to run concurrently. Raising the same two issues in each appeal, Vasquez contends that (1) the trial court erred in denying her the common-law right of allocution, and (2) the trial court abused its discretion in permitting the State to amend its indictments to include deadly-weapon allegations.

We affirm the judgment of conviction in each appeal.

**Background**

In January 2018, Harris County Sherriff's Deputy N. Parojcic was assigned to the Multi-Agency Gang Task Force. At that time, the task force was investigating narcotics trafficking, which led them Vasquez's address. Deputy Parojcic's team set up surveillance of Vasquez's residence. They noticed cars coming and going from the residence but not staying at the location for long. The police stopped multiple cars after they left Vasquez's home and found small amounts of narcotics in the vehicles. People in the vehicles who were arrested told

---

[1] *See* TEX. HEALTH & SAFETY CODE § 481.102(3)(D), (6); *id.* § 481.112(a), (d); TEX. PENAL CODE § 12.32.

police that they had purchased the narcotics from Vasquez. Based on the surveillance information, Deputy Parojcic and his team obtained a search warrant for Vasquez's residence.

When executing the search warrant, the officers initially had difficulty getting through the front door of Vasquez's residence. Once inside, they heard water running in the bathroom and located Vasquez inside the shower. The police found marijuana floating on top of the water in the bathtub and crack cocaine in the bottom of the tub. They also found a white powdery residue floating in the toilet, which appeared to have been flushed. The police also recovered two digital scales and a beaker, items commonly used to cut and mix narcotics.

During the execution of the warrant, the officers found firearms in the home. One of the firearms, located under the sink in the bathroom, was loaded with ammunition. Three children, between the ages of 10 and 14, were in the home at the time. Two of the children were Vasquez's children. The third child was her children's friend.

Substances recovered from Vasquez's home tested positive for cocaine and methamphetamine. Vasquez was separately charged with the first-degree felony offenses of (1) possession with intent to deliver methamphetamine, weighing more than 4 grams and less than 200 grams, and (2) possession with intent to deliver cocaine, weighing more than 4 grams and less than 200 grams.

On February 18, 2019, the State filed a motion to amend the indictments to include a paragraph alleging that Vasquez had used or exhibited a deadly weapon—namely, a firearm—during the commission of the offenses. The next day, the trial court granted the State's motion to include the deadly-weapon allegations in the indictments, and Vasquez pleaded guilty to both offenses without a punishment recommendation from the State. The plea papers signed by Vasquez contained the allegations of the offenses and the deadly-weapon allegations. In signing the pleas, Vasquez admitted that all allegations were true and confessed to committing the alleged acts. The trial court did not find Vasquez guilty at the time of the pleas and reset the cases for a sentencing hearing, pending completion of a PSI report.

Following the preparation of the PSI report, the trial court conducted a joint sentencing hearing for the cases on April 30, 2019. Five days before the hearing, Vasquez filed a sentencing memorandum for each offense.

In her sentencing memorandum, Vasquez requested that she be placed on deferred adjudication community supervision. Vasquez asserted that there were several factors supporting her request. She pointed out that she did not have a criminal record and was eligible for community supervision. Vasquez stated that she had two minor daughters who would be "adversely impacted" if she were

4

incarcerated. Vasquez also represented that she was employed "in home health care," caring for an elderly woman.

Attached to her sentencing memorandum were six letters written by her family members and acquaintances. The letters supported the factual claims Vasquez made in her sentencing memorandum and provided positive descriptions of Vasquez's character. Vasquez also offered a criminal-record search to show that she had not previously been convicted of a crime, and she attached her oldest daughter's school records to show that her daughter was a successful student.

At the sentencing hearing, the State called Deputy Parojcic to testify. He described the surveillance of Vasquez's home from which police developed probable cause that Vasquez was selling narcotics from her residence. Deputy Parojcic described the execution of the search warrant during which the police caught Vasquez trying to dispose of narcotics, recovered cocaine and methamphetamine, found several handguns in accessible locations in the home—including a loaded handgun under the bathroom sink—and discovered that three children were in the home. Along with his testimony, the State offered photographs from inside the residence that were taken during the execution of the search warrant. The photographs depicted items, including narcotics and firearms, that Deputy Parojcic testified were recovered from the home.

5

Vasquez did not call any witnesses to testify, but she did offer into evidence the attachments to her sentencing memorandum, including the six letters supporting her request to be place on deferred adjudication community supervision. Counsel also reminded the trial court that Vasquez had filed an application to be placed on community supervision.

At that point, the following exchange occurred between the trial court and defense counsel:

THE COURT:        All right. And so at this time does your client wish to make a statement?

[Defense counsel]:   She wants the right to allocute at the appropriate time.

THE COURT:        All right. So the State has rest[ed]. Do you rest?

[Defense counsel]:   I do rest, Your Honor.

Each side then presented its closing arguments. After the State finished its closing argument, the trial court found Vasquez guilty of the offenses of (1) possession with intent to deliver methamphetamine weighing more than 4 grams and less than 200 grams and (2) possession with intent to deliver cocaine weighing more than 4 grams and less than 200 grams. The trial court also indicated that it found the deadly-weapon allegations in the indictments to be true. The trial court assessed Vasquez's punishment at 10 years in prison for each offense to run concurrently. Even though she had indicated to the trial court that she would

"allocute at the appropriate time," Vasquez did not make a statement to the trial court at any point.

Vasquez's attorney then indicated that he would assist Vasquez in filing an appeal but asked that he then be permitted to withdraw. Vasquez's attorney also requested that Vasquez be allowed to "get her affairs in order" before she was taken into custody, but the trial court denied the request.

Vasquez did not file a motion for new trial. She now appeals both judgments of conviction, raising two issues.

## Right of Allocution

In her first issue, Vasquez asserts that she was denied her right to exercise the common-law right of allocution.

"Allocution is a term that may have a variety of meanings." *Norton v. State*, 434 S.W.3d 767, 770 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The Fourteenth Court of Appeals offered the following description of the right of allocution:

> The practice of allocution has a long history and has taken different forms over time and across various jurisdictions. *See Shelton v. State*, 744 A.2d 465, 491–97 (Del. 2000) (outlining history and origins of allocution and the different types of allocution allowed in state and federal courts). The term "allocution" could refer to any one or more of the following: (1) a trial court's asking a criminal defendant whether there is a legal reason that would prevent the court from pronouncing judgment against the defendant; (2) a trial court's asking a criminal defendant whether the defendant wishes to say anything in mitigation of the sentence to be imposed; (3) a trial court's asking a

7

criminal defendant whether the defendant wishes to say anything regarding the offense before sentencing; (4) a trial court's asking a criminal defendant whether the defendant wishes to say anything before sentencing; or (5) the defendant's comments in response to any of the four foregoing questions. *See id.*

*Id.* at 770 n.2.

Article 42.07 of the Code of Criminal Procedure provides a statutory right of allocution. TEX. CODE CRIM. PROC. art. 42.07. It states that, before a sentence is pronounced, the trial court shall ask the defendant whether he has anything to say regarding why the sentence should not be pronounced against him. *Id.* Article 42.07 identifies three specific legal reasons why a sentence cannot be pronounced against a defendant: (1) the defendant has received a pardon; (2) he is incompetent; and (3) the defendant is not the person convicted. *Id.*

The record shows that the trial court asked Vasquez whether she wanted to make a statement before sentencing. Vasquez does not assert that the trial court denied her the statutory right to allocution under article 42.07. Nor does she assert that any of the three statutory reasons for not pronouncing sentence applied to her. Instead, Vasquez asserts that Texas common law provided her with a right of allocution to make a "plea for mitigation and mercy" on her own behalf that is broader than the statutory right of allocution. *See Eisen v. State*, 40 S.W.3d 628, 631–32 (Tex. App.—Waco 2001, pet. ref'd) (stating "allocution" refers to trial court's inquiry into whether criminal defendant wishes to "speak in mitigation of

8

the sentence to be imposed"). Vasquez contends that the trial court denied her the common-law right of allocution.

Vasquez acknowledged that any right of allocution must be preserved by making a timely and specific objection in the trial court and obtaining a ruling. *See McClintock v. State*, 508 S.W.2d 616, 618 (Tex. Crim. App. 1974) (concluding that appellant did not preserve complaint that trial court violated his right to "common law allocution" by failing to object in trial court prior to imposition of sentence). Vasquez asserts that she preserved her common-law right of allocution because, when the trial court offered her the opportunity to make a statement, she told the court that she would allocate "at the appropriate time" even though she did not take the opportunity to make a statement at that time.

To preserve error for appeal, a party is generally required to make a timely request, objection, or motion to the trial court and obtain an express or implied ruling. *See* TEX. R. APP. P. 33.1(a). Rule of Appellate Procedure 33.1 encompasses the concept of "party responsibility." *Norton*, 434 S.W.3d at 771 (quoting *Pena v. State*, 285 S.W.3d 459, 463 (Tex. Crim. App. 2009)). "This means that appellant, as the complaining party, had the responsibility of clearly conveying to the trial court the particular complaint that she now raises on appeal, including 'the precise and proper application of the law as well as the underlying rationale.'" *Id.* (quoting *Pena*, 285 S.W.3d at 463–64).

In *Pena v. State*, the Court of Criminal Appeals "emphasized the rather exacting standard for preserving a complaint for appellate review." *Id.* (citing *Pena*, 285 S.W.3d at 463–64). To avoid forfeiting an appellate complaint, the complaining party must "let the trial judge know what he wants, why he thinks he is entitled to it, and [must] do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Pena*, 285 S.W.3d at 464 (internal quotation marks omitted). The preservation requirement "ensures that trial courts are provided an opportunity to correct their own mistakes at the most convenient and appropriate time—when the mistakes are alleged to have been made." *Hull v. State*, 67 S.W.3d 215, 217 (Tex. Crim. App. 2002). "In determining whether an appellant has preserved error, a reviewing court considers the context in which the objection was made and the parties' shared understanding at that time." *Norton*, 434 S.W.3d at 771 (citing *Pena*, 285 S.W.3d at 463–64).

The record shows that, after the defense offered its evidence, the trial court asked Vasquez's counsel whether Vasquez wanted to make a statement. Vasquez did not take the opportunity to make a statement at that point; instead, Vasquez's counsel indicated that Vasquez wanted "to allocate at the appropriate time" but did not indicate when that would occur. The trial court responded "[a]ll right" and asked the defense if it intended to rest. The defense then rested, the parties

10

presented closing arguments, and the trial court found Vasquez guilty and assessed her sentences. After that, defense counsel told the trial court that he would assist Vasquez in filing her notices of appeal, requested to withdraw as her counsel, and asked that Vasquez not be taken into immediate custody. Neither the trial court nor the defense mentioned Vasquez's allocution.

Although she requested the right to allocute, Vasquez did not specify whether it was pursuant to her statutory right or her alleged common law right. *See id.* (indicating that defendant must clearly convey request that he be permitted to exercise alleged common-law right of allocution). Most importantly, Vasquez does not show that she alerted the trial court to the complaint she now raises on appeal: that the trial court erred by denying her the common-law right of allocution. The only discussion of the matter in the trial court indicates that the court was agreeable to Vasquez's making an allocution.

The record shows that the trial court offered Vasquez the right to make a statement, but she declined at that point, delaying it to an indefinite "appropriate time." When the trial court pronounced her sentences, Vasquez did not object that she had been denied her the right to allocute, a right that the trial court had previously offered to her. Instead, Vasquez's counsel proceeded to raise other matters with the trial court regarding his withdrawal as Vasquez's counsel, his willingness to assist her in filing her notices of appeal, and her request not to be

11

taken immediately into custody. But Vasquez did not alert the trial court to the fact that she had not made her allocution as had been discussed earlier in the proceeding.

In short, Vasquez did not convey an objection to the trial court that it had violated her alleged right to common-law allocution. As a result, the trial court was not given an opportunity to correct any error relating to Vasquez's claimed common-law right to allocute "at a time when the judge [was] in the proper position to do something about it." *See Pena*, 285 S.W.3d at 464. Under the specific circumstance presented here, we hold that Vasquez did not preserve error, if any, with respect to her complaint that she was denied her common-law right of allocution.[2]

Even if we were to assume that the trial court erred by denying Vasquez her alleged common-law right of allocution, the record does not demonstrate that Vasquez was harmed by the denial. Courts have determined that the right to allocution is not a constitutional right. *See Eisen*, 40 S.W.3d at 636 ("We hold that the common law right of allocution did not achieve constitutional status.");

---

[2] We need not and do not address whether criminal defendants in Texas have a common-law right of allocution that is broader than the right of allocution under article 42.07 of the Code of Criminal Procedure. *See Norton v. State*, 434 S.W.3d 767, 771 n.3 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (declining to address whether common-law right to allocution exists when error not preserved); *see also Brown v. State*, No. 06–16–00007–CR, 2016 WL 5956064, at *3 n.9 (Tex. App.—Texarkana Oct. 14, 2016, pet. denied) (mem. op., not designated for publication) (stating that law is unclear whether right of common-law allocution currently exists in Texas).

12

*Clifford v. State*, No. 13–10–00256–CR, 2010 WL 5020237, at *3 (Tex. App.—Corpus Christi Dec. 9, 2010, pet. ref'd) (mem. op., not designated for publication) (concluding allocution is not constitutional right).

Non-constitutional error requires reversal only if it affects the substantial rights of the accused. *See* TEX. R. APP. P. 44.2(b). Vasquez asserts that the trial court's alleged failure to allow her to allocute "cannot be termed harmless in light of the fact that [Vasquez], with no prior felony convictions, was denied a chance at probation" and sentenced to 10 years in prison.

Vasquez was eligible for deferred adjudication community supervision for the possession-with-intent-to deliver offenses, which, as charged, were first-degree offenses with a range of punishment from 5 to 99 years or life and a fine not to exceed $10,000. *See* TEX. CODE CRIM. PROC. art. 42A.102(b); TEX. HEALTH & SAFETY CODE § 481.102(3)(D), (6); *id.* § 481.112(a), (d); TEX. PENAL CODE § 12.32. At the sentencing hearing, the State presented evidence showing, among other things, that Vasquez was packaging narcotics and selling them from her residence to buyers who would come to her home. She had firearms in her home in accessible locations, including at least one loaded handgun. And she had children living in her home under these conditions.

The record also shows that Vasquez offered mitigating evidence to support her request for deferred adjudication community supervision. She offered six

13

letters from family members and acquaintances, stating that she was employed, attesting to her good character, and indicating that she was a good mother. Vasquez also offered her oldest daughter's school records showing that the child was succeeding in school, and Vasquez offered records indicating that she had no prior convictions. Vasquez had the opportunity to call witnesses at the sentencing hearing but did not call any. Finally, and importantly, Vasquez did not make a record to show what additional mitigating statements or pleas for leniency she would have made to the trial court had she addressed the court. Therefore, we cannot conclude that the complained-of error substantially affected Vasquez's rights. *See* TEX. R. APP. P. 44.2(b).

We overrule Vasquez's first issue in each appeal.

**Amendment of Indictment**

In her second issue, Vasquez contends that the trial court abused its discretion by allowing the State to amend the indictments to include deadly-weapon allegations, specifically, that Vasquez used a firearm during the commission of the offenses.

To support her contention, Vasquez cites subsections (b) and (c) of Code of Criminal Procedure article 28.10. TEX. CODE CRIM. PROC. art. 28.10. Subsection (b) provides that an indictment may be amended after trial commences if the defendant does not object. *Id.* art. 28.10(b). Subsection (c) provides that an

14

indictment "may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced." *Id.* art. 28.10(c). In her brief, Vasquez asserts that "the Trial Court did not comply with the requirements of Article 28.10."

Vasquez also asserts that she did not have adequate notice that the State would seek to amend the indictments to add deadly-weapon allegations. Even though notice need not be contained in the indictment, a defendant is entitled to written notice that the State will seek an affirmative deadly-weapon finding. *Brooks v. State*, 847 S.W.2d 247, 248 (Tex. Crim. App. 1993). The notice requirement is "firmly rooted in fundamental precepts of due process and due course of law." *Villescas v. State*, 189 S.W.3d 290, 293 (Tex. Crim. App. 2006) (internal quotation marks omitted).

Vasquez points out that the trial court granted the State's motions to amend the indictments on the same day that she pleaded guilty to the offenses. She asserts that the record is not clear whether she had an opportunity to object to the amendment of the indictments on that date because, while the record shows she was present with her counsel for the plea proceedings, the record does not show whether she was present when the trial court granted the motions to amend the indictments.

The record shows that the motions to amend the indictments were filed the day before Vasquez pleaded guilty. The motions contain a certificate of service signed by the State's counsel and attesting that the motions were emailed to Vasquez's counsel. In addition, the plea papers that Vasquez signed contain not only the allegations of the elements of the offenses but also the deadly-weapon allegations. In signing the pleas, Vasquez admitted that all the allegations were true and confessed to committing the alleged acts. Vasquez made no objection to the deadly-weapon allegations before signing the plea papers.

In addition, after Vasquez pleaded guilty on February 19, 2019, the trial court reset the cases for a sentencing hearing on April 30, 2019, pending the preparation of a PSI report. During that two-month period, Vasquez did not object to the amendment of the indictments. In her sentencing memorandum, filed five days before the sentencing hearing, Vasquez acknowledged that the indictments included deadly-weapon allegations, but she did not object in her memorandum to the allegations. Nor did Vasquez object at the sentencing hearing to the amended language in the indictments.

Because she did not object in the trial court to the amendment of the indictments based on Code of Criminal Procedure article 28.10, lack of notice, or on any other basis, we agree with the State that Vasquez has waived her complaints

16

on appeal regarding the trial court's granting of the motion to amend. *See* TEX. R. APP. P. 33.1(a)(1). We overrule Vasquez's second issue in each appeal.

## Conclusion

We affirm the judgments of the trial court.


Richard Hightower
Justice

Panel consists of Justices Keyes, Lloyd, and Hightower.

Publish. Tex. R. App. P. 47.2(b).