

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-77,094

### DAMEON JAMARC MOSLEY, Appellant

**v.**

### THE STATE OF TEXAS

### ON DIRECT APPEAL FROM CAUSE NO. 114-0510-17
### IN THE 114TH DISTRICT COURT
### SMITH COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., RICHARDSON, YEARY, NEWELL, WALKER, and McCLURE, JJ., joined. WALKER, J., filed a concurring opinion in which RICHARDSON, J., joined. KEEL, J., concurred.

### O P I N I O N

In November 2019, a jury convicted Appellant of capital murder for fatally shooting gas station employee Billy Stacks in the course of committing or attempting to commit a robbery. TEX. PENAL CODE § 19.03(a)(2). Based on the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, Sections 2(b) and 2(e), the trial court sentenced Appellant to death. *See* TEX. CODE CRIM. PROC. art.

37.071, § 2(g).[1] Direct appeal to this Court is automatic. Art. 37.071, § 2(h). Appellant

raises thirteen points of error.[2] We affirm the trial court's judgment of conviction and

sentence of death.

## I.    BACKGROUND

Appellant and two co-conspirators, Kedarius Oliver and LaMarcus Hannah,

planned to commit a robbery at a Conoco Truck Express gas station in Tyler, Texas. On

January 28, 2017, Hannah drove the group to the Conoco in Appellant's Dodge Avenger.

Appellant and Oliver exited the vehicle on a road behind the Conoco. Hannah stayed with

the car as the getaway driver.

Appellant approached the Conoco's entrance on foot while Oliver acted as a

lookout. Once Oliver confirmed that no customers were in the front of the store,

Appellant entered at approximately 3:37 a.m. He was carrying a revolver and wearing a

black hoodie, dark jeans, a ski mask, and white gloves. Appellant approached the cash

register with his finger on the revolver's trigger, jumped over the service counter, and

confronted Stacks, the clerk.[3] During a brief struggle between the two men, the gun

---

[1] Unless otherwise indicated, all subsequent citations in this opinion to "Articles" refer to the Texas Code of Criminal Procedure.

[2] Points of error one through seven raise challenges to Texas's statutory death penalty scheme and will be addressed together at the end of the opinion. We will begin our analysis with point of error eight.

[3] This conduct was captured on the station's surveillance cameras. At trial, Appellant acknowledged that he was the person depicted on the video.

discharged twice. Stacks was struck in the forehead and the left shoulder and fell to the ground. After Stacks collapsed, Appellant took approximately $1,700 from the cash register and fled the scene. Several individuals in a separate room at the back of the Conoco heard the shooting and called 911. Stacks was conscious when paramedics arrived but died the next day after being taken off life support. Appellant was indicted for capital murder.

At trial, Appellant argued that, although he intended to rob Stacks at gunpoint, he did not intend to kill him. Appellant claimed that the gun went off accidentally during the struggle, so he was guilty only of felony murder. *See* TEX. PENAL CODE § 19.02(b)(3).

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

During the guilt phase of trial, the State presented the testimony of Emily Stephenson, an ICU nurse who monitored Stacks while he was on life support. She testified that Stacks's wife, Cheryl, approached the nursing team with the decision to take Stacks off of his ventilator and life-sustaining medications. The prosecutor asked Stephenson to describe Cheryl's demeanor when she made that decision. Stephenson responded:

> She was very -- very sad. I mean, it was just a very overall somber environment. It was, of course, a very difficult decision to come to, to decide that this is what Mr. Stacks would have wished, you know, considering the outcome of his injury.
>
> And she was overall very sad. And there was another [family] member that was with her as well. He was very sad as well.

The prosecutor also asked Stephenson to describe the mood in the room as Stacks was taken off of life support and pronounced dead. She testified:

> It was very heartbreaking, and it was very sad. I remember Mrs. Stacks was sitting beside him on the bedside. Like I said, she was holding his hand, and she was telling him: It's okay. You can let go. And overall, it was just a very sad environment in the room.

Trial counsel did not contemporaneously object to this testimony.

In his eighth point of error, Appellant claims that his trial counsel was ineffective for failing to object to Stephenson's testimony. Specifically, Appellant asserts that Stephenson's testimony had no tendency to make more or less probable a fact of consequence in determining Appellant's guilt. *See* TEX. R. EVID. 401, 402; *cf. Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990) (holding that the victim-impact evidence at issue was inadmissable because it did not have a tendency to make more or less probable the existence of any fact of consequence at the guilt stage of trial). Appellant therefore argues that trial counsel had a duty to object to Stephenson's testimony as irrelevant victim-impact evidence.

To establish ineffective assistance, an appellant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We have held that "'[d]irect appeal is usually an inadequate vehicle for raising such a claim . . . .'" and that the claim must be "'firmly founded in the record' and 'the record . . . affirmatively demonstrate[s] the meritorious nature of the claim.'" *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim.

App. 2005) (quoting *Goodspeed v. State*, 187 S.W.3d 390 (Tex. Crim. App. 2005)).

Assuming without deciding that trial counsel's failure to object constituted deficient performance,[4] Appellant has not established prejudice. Appellant contends that the admission of Stephenson's victim-impact testimony was prejudicial because there is a reasonable probability that the testimony pushed the jury toward a finding of guilt on the more serious offense. He claims that, but for the admission of victim-impact evidence, the jury would have convicted him of felony murder instead of capital murder.

The record does not support Appellant's argument. For the jury to find Appellant guilty of only felony murder, the jury would need to find that Appellant had no intent to kill, but the challenged testimony had no bearing on whether Appellant had the intent to kill, so its probative value is weak. We conclude Appellant was not prejudiced because there is no reasonable probability that the outcome of the trial would have been different but for the admission of Stephenson's testimony. Because Appellant has not shown prejudice, we overrule Appellant's eighth point of error.

## III.    IMPROPER JURY ARGUMENT

In his ninth point of error, Appellant claims that the prosecutor engaged in improper jury argument when he injected his personal opinion of a witness's credibility. In Appellant's case in chief, Dr. Christi Compton opined that Appellant met the criteria

---

[4] There was an exchange between trial counsel and the court outside the jury's presence following Stephenson's testimony in which counsel described her failure to object as "my bad" and indicated that she intended to object to similar testimony in future exchanges. These circumstances suggest that counsel had no strategic basis for failing to object.

for mild intellectual disability. The State's expert, Dr. Timothy Proctor, concluded that

Appellant did not meet the definition of intellectual disability. During closing argument at

the punishment phase, the prosecutor repeated Proctor's conclusion and told the jury:

> The reason we love Dr. Proctor, the reason we called him, and the reason
> you can trust what he tells you is, look, if he's trying to bend the answers
> for me and trying to help me as much as possible, then he's going to come
> in here and try to work some number magic like Dr. Compton did . . . . Dr.
> Proctor doesn't do that. He comes in and tells it like it is, whether it's good
> for me or bad for me.

In his later argument, the prosecutor repeated that Dr. Proctor would "tell it like it is."

Trial counsel did not object to either instance.

Appellant asserts that, by claiming to "love" the witness, saying that the witness

"tells it like it is," and arguing that the jury could "trust him," the prosecutor injected his

personal opinion of the witness's credibility. Appellant argues that this undermined the

jury's role as the sole arbiter of credibility. Moreover, he complains that this was

improper jury argument since the statements implied to the jury that there must be

something outside the evidence presented that made Proctor's testimony more credible

than Compton's. *See United States v. Young*, 470 U.S. 1, 18 (1985).

A prosecutor may not inject his personal opinion of a witness's credibility during

closing argument. *Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981) (op. on

2d reh'g). However, this Court has previously held, and recently reaffirmed, that the right

not to be subjected to improper jury argument is forfeitable by inaction. *See Cockrell v.*

*State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *see also Hernandez v. State*, 538

S.W.3d 619, 622 (Tex. Crim. App. 2018).

Appellant acknowledges that his trial counsel did not object to the statements, but he argues that this Court should adopt the federal plain-error standard for this type of error, and reverse even absent an objection, because of the weight given to a prosecutor's statements. *See United States v. Gracia*, 522 F.3d 597, 600 (5th Cir. 2008). Appellant's arguments do not persuade us to revisit *Cockrell*. Because Appellant did not object to this argument at trial, he forfeited the ability to complain about it on appeal. We overrule Appellant's ninth point of error.

## IV.	LAY OPINION TESTIMONY

In his tenth point of error, Appellant claims that the trial court erred in overruling his objection to lay witness opinion testimony. *See* TEX. R. EVID. 701.[5] He alleges that the State elicited improper lay witness testimony from Detective Ron Rathbun, the lead investigator on the case, in the following colloquy:

> Q. Detective Rathbun, in your investigation, did you find any evidence in your opinion of the intent to kill; that [Appellant], at the time he pulled the trigger, had the intent to kill Billy Stacks?
>
> [DEFENSE COUNSEL]: Objection, Your Honor. Calls for an opinion -- or calls for him to be an expert.
>
> THE COURT: Overruled as to this question.
>
> Q. (By [the State]) What evidence did you find of an intent to -- to kill Mr. Stacks?

---

[5] Unless otherwise indicated, all subsequent citations in this section to "Rules" refer to the Texas Rules of Evidence.

A. He -- he went in the store, the Conoco. He -- he -- he dressed in a way that he hid himself over to -- to hide his identity. He had a loaded gun. The video shows that he had his finger on that gun. And he approached Mr. Stacks by jumping over the counter and -- and coming up on Mr. Stacks. I just -- I guess what I'm saying is, it doesn't surprise me that -- that he killed him because of what he did that night when he walked through that door -- or ran through that door and did what he did.

Q. He went in with a loaded gun. That's the first thing.

A. Yes, sir.

Q. You said -- didn't stay on the customer side of the counter and ask for the money, right? He jumped it.

A. Yes.

Q. Mr. Stacks, I guess he's back in the counter when the video starts. If I understand you right, [Appellant] is the one who approaches Mr. Stacks. He comes after him, correct?

A. Correct.

Rule 701 states, "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." *Id.* Appellant contends that, because Rathbun's opinion was based entirely upon his viewing of surveillance footage, it was not "based on the witness's perception" of the events in question. Therefore, Appellant argues that Rathbun's testimony was inadmissible under Rule 701(a). Appellant also complains that the second requirement for lay witness opinion under Rule 701(b) was not met because the jury viewed the same surveillance video and was in the same position as Rathbun to draw its own conclusions

about Appellant's intent. The State counters that Appellant's objection at trial did not preserve a complaint as to Rule 701(a) or (b) for appellate review. We agree that Appellant did not adequately preserve either complaint.

Preservation of error is governed by Rule 33.1 of the Texas Rules of Appellate Procedure. *See Pena v. State*, 285 S.W.3d 459, 463 (Tex. Crim. App. 2009). To preserve a complaint for appellate review, an objection must state the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a). The complaining party bears the responsibility of clearly conveying his particular complaint to the trial judge. *See Pena*, 285 S.W.3d at 464. To avoid forfeiting a complaint on appeal, the party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Id.* (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). This gives the trial judge and the opposing party an opportunity to correct the error. *Id.*

Appellant's objection that the prosecutor's question "call[ed] for an opinion -- or call[ed] for [Rathbun] to be an expert" was ambiguous. Even in context, the objection failed to inform the trial court that Appellant was complaining that neither component for lay opinion testimony had been met. Appellant's lack of clarification prevented the trial court from addressing the merits of a Rule 701 objection at trial. Therefore, he did not preserve Rule 701 complaints for appellate review. We overrule Appellant's tenth point

of error.

## V.    INTELLECTUAL DISABILITY DETERMINATION

The defense filed a pretrial motion asking for a separate trial to determine whether Appellant had an intellectual disability that would render him ineligible for the death penalty. *See Atkins v. Virginia*, 536 U.S. 304, 321 (2002); *see also Moore v. Texas*, 581 U.S. 1, 12 (2017). In his eleventh point of error, Appellant complains that the trial court erroneously denied this motion.

In its ruling, the trial court cited *Petetan v. State*, 622 S.W.3d 321 (Tex. Crim. App. 2021). There, this Court held that the issue of intellectual disability could not be litigated pretrial because it is a sentencing issue and "sentencing issues are generally not ripe for review before a finding of guilt." *Id.* at 334. Appellant now argues that *Petetan* was wrongly decided because the continued lack of statutory guidance for intellectual disability determinations creates an unconstitutional risk that someone with an intellectual disability will be executed. *See Atkins*, 536 U.S. at 321; *see also Moore*, 581 U.S. at 6. Appellant asks us to overturn *Petetan* and hold that the Eighth Amendment requires a separate jury to determine intellectual disability independent of guilt.

We are not persuaded to revisit *Petetan*. Because there is no requirement in Texas law that the intellectual disability issue be resolved pretrial, the trial court did not abuse its discretion in denying Appellant's motion. We overrule Appellant's eleventh point of error.

**VI.     JURY CHARGE ERROR**

In points of error twelve and thirteen, Appellant asserts that he was harmed by errors in the court's punishment charge. A claim of jury charge error is reviewed using the standard set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).

**A.      Order of Special Issues**

The jury charge submitted the special issues in the following order: (1) the future-dangerousness instruction; (2) the mitigation instruction; and (3) the intellectual disability instruction. At the charge conference, Appellant objected to the order of the special issues and argued that the intellectual disability issue should be submitted in the charge first. The trial court overruled the objection.

In his twelfth point of error, Appellant complains that the trial court erred in denying his re-ordering request. He argues that the intellectual disability issue should come first because a finding of intellectual disability would preclude the imposition of the death penalty and moot out the two remaining special issues. Additionally, he asserts that submitting the intellectual disability issue after the mitigation issue might encourage the jury to disregard the mitigating effect of his intellectual disability evidence and could suggest that it did not have great mitigation value in the first place.

Appellant directs our attention to two trial proceedings where the trial courts submitted the intellectual disability issue first. *See Brownlow v. State*, No. AP-77,068,

2020 WL 718026 (Tex. Crim. App. Feb. 12, 2020) (not designated for publication); *Thomas v. State*, No. AP-77,047, 2018 WL 6332526 (Tex. Crim. App. Dec. 5, 2018) (not designated for publication). However, these cases are distinguishable because the trial courts submitted the intellectual disability issue first at their own discretion. No authority required them to do so. Accordingly, the trial court in this case did not err in submitting the intellectual disability issue third. We overrule Appellant's twelfth point of error.

### B. Instruction on Evidence to be Considered

Appellant's thirteenth point of error argues that two charge errors regarding the intellectual disability special issue resulted in a capricious and arbitrary imposition of the death penalty in violation of the Eighth Amendment. *See Atkins*, 536 U.S. at 321 (noting that the Eighth Amendment bars the execution of intellectually disabled offenders).

Appellant first argues that the trial court erred by refusing to instruct the jury to consider only "that evidence presented to the jury by the experts" when considering the intellectual disability special issue. Appellant contended at trial that the facts of the case were irrelevant to the intellectual disability issue and that, if the jurors were permitted to consider the evidence from both phases of trial, they would take unconstitutional factors into consideration.[6] *See Moore*, 581 U.S. at 6 (noting that the adaptive functionality factors identified in *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004), created an

---

[6]In multiple parts of his brief, Appellant refers to the "evidence presented by the experts," but on the last page of his brief, he refers to the failure to limit the evidence the jury could consider to "psychological testing." We understand Appellant to use the terms synonymously.

unacceptable risk that a person with an intellectual disability would be executed in violation of the Eighth Amendment). Appellant now asserts that a jury restricted to considering only evidence presented by experts would result in an intellectual disability determination free from constitutional defect because experts would not rely on disavowed factors in determining intellectual ability.

"The legal determination of intellectual disability is distinct from a medical diagnosis, but it is informed by the medical community's diagnostic framework." *Hall v. Florida*, 572 U.S. 701, 721 (2014); *see also Kansas v. Crane*, 534 U.S. 407, 413 (2002) (noting that the science of psychiatry informs but does not control ultimate legal determinations). Therefore, expert input is not the only factor that can be considered.[7] The jury may also consider guilt and punishment evidence in reaching an intellectual disability determination. *See Petetan*, 622 S.W.3d at 333-34. Indeed, examining the details of the offense may be necessary when evaluating the strength and reliability of the evidence presented by the experts regarding intellectual disability. *Id.* at 334. Because the jury is not required to limit its intellectual disability determination to a review of only the evidence presented by the experts, the trial court did not violate the Eighth Amendment when it denied the request, and the jury charge was not erroneous on that basis.

---

[7]The State points out that the experts at punishment relied on lay information in forming their opinions, such as information gathered from family members, and it argues that an instruction limiting the jury's consideration to only evidence presented by the experts would have been an improper comment on the weight of the evidence. We need not resolve that argument, however, given that we conclude the trial court did not violate the Eighth Amendment when it refused to give the instruction.

Appellant next argues that the instructions in the jury charge were inconsistent. At the charge conference, Appellant objected to a portion of the intellectual disability instruction. It stated: "[W]hen deliberating on Special Issue No. 3, submitted in this Charge, the jury shall consider all the evidence admitted in the guilt or innocence stage or the punishment stage of this trial." Appellant argued that this language should be removed and replaced with an instruction to consider only evidence presented by the experts in making an intellectual disability determination. The State responded that, even if Appellant's proposed changes were made, the general instructions for the special issues would still instruct the jury to consider evidence from both the guilt and punishment phases of trial. The general instructions read as follows:

> In determining your answers to the questions, or "Special Issues," submitted to you, you shall consider all the evidence submitted to you in this whole trial. This includes the evidence admitted during the first stage of the trial concerning the defendant's guilt as well as any evidence admitted during this punishment stage in which you are now called upon to determine the answers to Special Issues submitted to you by the Court.

Following this exchange, Appellant maintained his objection regarding the wording of special issue number three and did not seek changes to any portion of the general instruction. The trial court sustained the first part of Appellant's objection and removed the language directing the jury to "consider all the evidence admitted in the guilt or innocence stage or the punishment stage of this trial" from the third special issue. However, the court again denied the request for an instruction that specifically directed the jury to consider only evidence presented by the experts. Appellant argues that the

resulting charge was erroneous because it was unclear as to whether the jury should consider evidence from the guilt phase of trial when answering the intellectual disability special issue. He contends that the fact that the general instruction was left in the jury charge does not matter because special issue number three did not instruct the jury about what evidence to consider in resolving that issue. Appellant concludes that, "[h]ypothetically, this places the jury in an awkward if not, inconsistent position."[8] We disagree and conclude that there was no error because the jury charge was clear.

In the final version of the jury charge, special issue number three was silent about what evidence the jury should consider. In the absence of a specific instruction, the jury was guided by the general instruction, which ordered the jury to "consider all the evidence submitted to you in this whole trial . . . [including] the evidence admitted during the first stage of the trial concerning the defendant's guilt as well as any evidence admitted during this punishment stage." The general instruction was clear, Appellant does not complain that the general instruction was incorrect or that it should have been removed, and Appellant directs us to no authority that requires an instruction informing the jury what evidence it can consider when deciding the intellectual disability special issue.[9] Further, as discussed above, the jury was not required to limit its consideration of

---

[8]Even if we concluded that the jury charge was erroneous, a defendant is not harmed under *Almanza* if the alleged harm is only hypothetical or theoretical. *Arline v. State*, 721 S.W.3d 348, 351 (Tex. Crim. App. 1986).

[9]Had there been no general instruction in the final charge, Appellant's claim might have been stronger.

the intellectual disability issue to only evidence presented by the experts. *See Petetan*, 622 S.W.3d at 333-34. Rather, the jury could look to evidence introduced at the guilt and punishment phases of trial. *Id.* Therefore, the jury charge was not erroneous, and we overrule Appellant's thirteenth point of error.

## VII. CHALLENGES TO THE DEATH PENALTY SCHEME

In points of error one through seven, Appellant raises a variety of challenges to Texas's statutory death penalty scheme. He complains that the trial court erred by overruling motions to: (1) declare Art. 37.071 unconstitutional; (2) declare Texas's statutory capital sentencing statute unconstitutional because it allows juries to decide future dangerousness based solely on the factors of the case; (3) declare the "10-12 Rule" unconstitutional; (4) hold unconstitutional Art. 37.071 § 2(e) and (f) for failing to require that mitigation be considered; (5) preclude the death penalty as a sentencing option and declare Art. 37.071 unconstitutional in light of *Ring v. Arizona*; (6) declare Texas's statutory capital sentencing scheme unconstitutional and preclude imposition of the death penalty; and (7) declare Texas's statutory death penalty scheme unconstitutional.

With regard to each claim, Appellant recognizes that his arguments in these points of error have been routinely denied by this Court, but he asserts that he must make them to exhaust his state claims so that he can pursue federal relief. Because Appellant provides only conclusory arguments in support of these claims, they are inadequately briefed and we need not address them. *See* Tex. R. App. P. 38.1(i). We also note, as

Appellant states, that we have rejected these claims in previous cases,[10] and we decline to revisit them now. Appellant's points of error one through seven are overruled.

## VIII. CONCLUSION

Finding no reversible error, we affirm the trial court's judgment of conviction and sentence of death.

Delivered: April 12, 2023

Publish

---

[10] *See Jenkins v. State*, 493 S.W.3d 583, 613-18 (Tex. Crim. App. 2016) (affirming the constitutionality of the 10-12 rule; rejecting the need to define "probability," "criminal acts of violence," "militates," and "continuing threat to society"); *Davis v. State*, 313 S.W.3d 317, 354-55 (Tex. Crim. App. 2010) (rejecting the need to define "personal moral culpability," "moral blameworthiness," and other terms; rejecting the contention that the mitigation special issue is unconstitutional by failing to assign a burden of proof); *Williams v. State*, 301 S.W.3d 675, 694 (Tex. Crim. App. 2009) (rejecting the contention that the death penalty, as presently administered in Texas, amounts to cruel and unusual punishment); *Russeau v. State*, 291 S.W.3d 426, 437 (Tex. Crim. App. 2009) (rejecting the contention that the death penalty scheme is unconstitutional for failing to provide a meaningful sufficiency review of the mitigation issue); *Saldano v. State*, 232 S.W.3d 77, 105 (Tex. Crim. App. 2007) (rejecting the contention that the statutory punishment instructions fail "to provide a rational basis to permit a discretionary grant of mercy based on mitigating circumstances"); *Roberts v. State*, 220 S.W.3d 521, 534 (Tex. Crim. App. 2007) (rejecting the contention that the mitigation special issue unconstitutionally narrowed mitigating evidence to that which reduces moral blameworthiness).